Stephen S. OLSON and Henrietta Olson, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 94–474T.

United States Court of Federal Claims.

April 21, 1997.

As Amended May 7 & May 9, 1997.

Order Denying Reconsideration May 28, 1997.

Thomas E. Redding and Teresa Womack, Redding & Associates, Houston, Texas, for plaintiffs.

Ellen C. Specker, with whom were Loretta C. Argrett, Assistant Attorney General, Mildred L. Seidman, Chief, Court of Federal Claims Section, and William K. Drew, Senior Trial Attorney, Tax Division, Department of Justice, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

### Introduction

Plaintiffs Stephen and Henrietta Olson (husband and wife) seek a refund of taxes, interest and penalties assessed against them

pursuant to a settlement agreement with the Internal Revenue Service ("IRS") formalizing the disallowance of an investment tax credit ("ITC") claimed by Stephen Olson's partnership.[1] Plaintiffs base their right to a refund primarily on the IRS's failure to have issued statutory notices of deficiency prior to assessing the amounts in question.

The essential question is whether, when a partnership-level determination under the Tax Equity and Fiscal Responsibility Act ("TEFRA") results in the invalidation of a claimed tax credit, the IRS is required to issue a statutory notice of deficiency before assessing against individual partners their distributive share of the invalidated credit if the partners have carried portions of the credit either forward or back to years other than the taxable year in which it was reported by the partnership.

## Background

*The Factual History*

In 1983, plaintiff Stephen S. Olson became a limited partner of Solar Energy Savers, Ltd. III ("Solar"), a partnership engaged in the leasing of energy-saving units.[2] On April 18, 1984, Solar filed a Form 1065 ("U.S. Partnership Return of Income") with the IRS for the taxable year 1983. The return reported an ordinary loss of $10,042 and a qualified investment of $3,208,240 in property eligible for the regular and business energy investment credits. Solar's return included a Schedule K–1 ("Partner's Share of Income, Credits, Deductions, etc.") for Stephen Olson. The schedule reported his distributive share of Solar's ordinary loss as $568 and his distributive share of Solar's qualified investment in property eligible for the investment credits as $181,495.

Plaintiffs filed a Form 1040 ("U.S. Individual Income Tax Return") for taxable year 1983. On Schedule E ("Supplemental Income Schedule") of the return, plaintiffs re-

ported a net loss of $568, representing Mr. Olson's share of Solar's ordinary loss. On Form 3468 ("Computation of Investment Credit"), plaintiffs reported a tentative regular investment credit of $14,519.60, and a tentative business energy investment credit of $27,224.25. Because of the tax liability limitation, plaintiffs reported an allowed regular investment credit of $12,904.58 and an allowed business energy investment credit of zero. The allowed credit of $12,904.58 offset the tax liability of the same amount reported on plaintiffs' Form 1040.

On March 14, 1984, plaintiffs filed a Form 1045 ("Application for Tentative Refund") with the IRS, requesting a refund for each of the taxable years 1980, 1981, and 1982 attributable to the carryback of: that portion of the $14,519.60 tentative regular investment credit reported on the 1983 Form 1040 that was not utilized for taxable year 1983; and the full amount of the $27,224.25 tentative business energy investment credit reported (but not used) on the 1983 Form 1040. Specifically, plaintiffs requested a refund for the carryback years in the following amounts:

| Year | Amount |
| --- | --- |
| 1980 | $9,353.00 |
| 1981 | 6,461.00 |
| 1982 | 2,759.08 |

Plaintiffs' attachment to Form 1045 showed an available carryover to 1984 of $10,266.19 of the unused credits.

On April 16, 1984, the IRS issued refunds to plaintiffs in the following amounts for the carryback years:

| Year | Amount[3] |
| --- | --- |
| 1980 | $9,060.56 |
| 1981 | 6,461.00 |
| 1982 | 3,134.00 |

On May 6, 1985, plaintiffs filed a Form 1040 for taxable year 1984. On Schedule E of the return, plaintiffs reported a net loss of

---

1. Although this tax refund suit focuses only on Stephen Olson's business dealings, Henrietta Olson appears as a named plaintiff because she filed a joint tax return with her husband.

2. Plaintiff contributed $22,000 in exchange for a 5.66% interest in partnership profits and losses and a 5.71% interest in partnership capital.

3. The IRS issued a smaller refund for 1980, and a larger refund for 1983, than the amounts requested by plaintiffs. This apparently stemmed from the IRS's recalculation of plaintiffs' tax liability for 1980 as $9,060.45 (instead of $9,353), and plaintiffs' tax liability for 1982 as $3,134 (instead of $2,759.08).

$3,637, representing Mr. Olson's distributive share of Solar's ordinary loss for 1984. On Form 3468, plaintiffs reported a carryforward of unused investment credit from 1983 of $10,266.19, and a total tentative regular investment credit of $10,513.63 (including a current year investment credit of $247.44). Because of the tax liability limitation, the Form 3468 reported an allowed credit of $7,008, which offset the income tax liability of the same amount reported on plaintiffs' Form 1040. The record does not reflect whether the remaining credit was ever claimed by plaintiffs.

By letter dated November 27, 1985, the IRS advised Mr. Olson that it was beginning a partnership-level examination of Solar.[4] A partnership-level examination was conducted and, on November 16, 1989, plaintiffs executed Part I ("Offer of Settlement of Partnership Items") and Part II ("Offer of Settlement of Penalties") of Form 870–L(AD) ("Settlement Agreement for Partnership Adjustments and Affected Items") relating to taxable year 1983 and Parts I and II of Form 870–L(AD) relating to taxable year 1984. Under the terms of Part I, plaintiffs offered to enter into a settlement agreement "with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments," and to "waive the restrictions on the assessment and collection of any deficiency attributable to partnership items ... provided in section 6225(A) [of the Internal Revenue Code]." Part I also provided that the treatment of partnership items under the agreement would "not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact," and that "no claim for refund or credit based on any change in the treatment

of partnership items may be filed or prosecuted."

In Part II, plaintiffs offered to enter into a settlement agreement regarding penalties and interest attributable to the adjustment of partnership items. Under this section's terms, plaintiffs agreed to "waive the restrictions provided in section 6213(A) of the Code and to consent to the assessment and collection" of the penalties and interest. Like Part I, Part II provided that the treatment of penalties and interest would not be reopened absent fraud, malfeasance, or misrepresentation, and that "no claim for refund or credit based on any change in the treatment of the penalties, including interest under section 6621(c), may be filed or prosecuted." Both Parts I and II required acceptance by the IRS Commissioner in order for the terms of plaintiffs' offer to have any force or effect. On February 23, 1990, Parts I and II of the Form 870–L(AD) relating to taxable years 1983 and 1984 were accepted on behalf of the IRS Commissioner.

The Schedule of Adjustments attached to the Form 870–L(AD) for taxable year 1984 contained no adjustments. The Schedule for 1983 reflected: a total allowable partnership loss of $137,090 for 1983 (instead of the loss of $10,042 reported on the Form 1065); and disallowance of the partnership investment credit basis, and the partnership business energy credit basis, in the amount of $3,208,-240. The Schedule itself provided that section 6621(c) interest would apply to plaintiffs' underpayment, and that a section 6659 penalty would apply at a rate of 20%.

On April 20, 1990, the IRS mailed to plaintiffs a Form 4549–A ("Income Tax Examination Changes") explaining how the adjustments to Solar's 1983 tax liability affected

---

4. As part of the examination process, the IRS addressed the potential statute of limitations problem. On August 19 and August 30, 1986, authorized representatives of Solar executed a Form 872–O ("Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership") on the partnership's behalf. The Form 872–O was executed on behalf of the IRS on September 11, 1986. The agreement provided that, regardless of any statutory limitations period, the IRS could assess a federal income tax on any of Solar's partnership items for taxable year 1983 on or before the 90th day after either

the partnership or the IRS withdrew their consent via Form 872–N ("Notice of Termination of Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership"). The agreement also was made subject to termination upon the "final determination of tax and the final administrative appeals consideration," but under no circumstances was the agreement to reduce the period of time otherwise provided by laws for assessing such taxes. The subsequent IRS assessments were within the statute of limitations, as both parties recognize.

their personal tax liability for taxable years 1983 and 1984. The Form 4549-A for taxable year 1983 reflected that plaintiffs' share of Solar's disallowed credit bases resulted in a deficiency of $7,110 and a penalty of $1,422, plus applicable interest under section 6621(c). The Form 4549-A for taxable year 1984 reflected a deficiency of $6,275 and a penalty of $1,255, plus applicable interest. While no adjustments to plaintiffs' 1984 taxable income had been made by the IRS, the 1984 deficiency resulted from the IRS's disallowance of Solar's 1983 credit, a portion of which plaintiffs had carried over to their 1984 return.

Also on April 20, 1990, the IRS mailed to plaintiffs a second Form 4549-A explaining how the adjustments to Solar's 1983 tax liability affected their personal tax liability for taxable years 1980, 1981, and 1982. The Form reflected underpayments of $9,065 for 1980, $6,461 for 1981, and $3,147 for 1982, plus a 20% penalty and applicable interest for each year. These underpayments resulted from the IRS's disallowance of plaintiffs' carrybacks of their unused shares of Solar's investment credits from taxable year 1983.

On June 4, 1990, the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") for Solar's 1983 and 1984 taxable years. Attached to the FPAA was a Form 4605-A ("Statement of Income Tax Changes—Partnerships, Fiduciaries, Small Business Corporations, and Domestic International Sales Corporations") that reflected a positive adjustment to ordinary income of $11,519, and disallowance of the investment and business energy credit bases in the amount of $3,208,240. The Explanation of Adjustments attached to the FPAA stated that penalties under Internal Revenue Code ["IRC"] sections 6621(c), 6653, 6659, and 6661 would be raised in separate partner-level proceedings following the partnership-level proceeding.

Between May 21 and June 18, 1990, the IRS assessed a total of $60,177.98 in tax, penalty, and interest against plaintiffs covering the years 1980, 1981, 1982, and 1984. Plaintiffs paid the amounts in full between May 25 and June 26, 1990.

On May 28, 1992, the IRS received from plaintiffs a Form 1040X ("Amended U.S. Individual Income Tax Return") and a Form 843 ("Claim for Refund and Request for Abatement") for each of the taxable years 1980, 1981, 1982, and 1984. The Forms requested full refunds of the amounts that plaintiffs had been assessed and had paid. By letter dated July 24, 1992, the IRS denied the requests for refund.

On July 25, 1994, plaintiffs filed suit in this court, alleging that they have overpaid their income taxes for 1980, 1981, 1982, and 1984. Defendant has moved for partial dismissal or partial summary judgment, and plaintiffs has cross-moved for summary judgment.

*The Statutory Framework*

Plaintiffs allege that the tax assessments made against them by the IRS were void and illegal under IRC § 6213(a) because no statutory notices of deficiency had been issued. As such, plaintiffs contend that they are entitled to a refund of each payment made pursuant to those assessments. Defendant counters with a three-fold argument. First, and most fundamentally, defendant contends that this court lacks jurisdiction to hear plaintiffs' claims. Those claims, asserts defendant, represent challenges to tax liabilities previously established in a partnership-level proceeding and therefore, under TEFRA, cannot be reexamined here—or, for that matter, in any court. Second, defendant contends that, under the provisions of TEFRA, the IRS was not required to issue statutory notices of deficiency before assessing plaintiffs' tax deficiency. Third, and finally, defendant contends that plaintiffs may not challenge the tax, interest, or penalty assessments in question because they are bound by the terms of their settlement agreement with the IRS.

As may perhaps already be evident from the parties' arguments, the outcome of this case turns on the procedural intricacies of the law of partnership taxation, as set forth in the Tax Equity and Fiscal Responsibility Act ("TEFRA"), Pub.L. No. 97-248, 96 Stat. 324 (codified in relevant part at 26 U.S.C.A. §§ 6221-6233 (West 1989)). As more than one practitioner has observed, the complexity of this area of the law can be daunting and the rules less than clear: "[W]hen everyday

practical problems arise, the rules [of TEFRA] leave many questions unaddressed or provide inadequate guidance, despite what seem to be an endless supply of specific rules." Michael I. Saltzman, *IRS Practice and Procedure* ¶ 8.09, at 8–97 (2d ed.1991). Nevertheless, the basic framework under which partnerships are taxed must be roughly outlined for the substance of both parties' contentions to be understood, much less resolved.

Partnerships are "tax-reporting, not tax-paying, entities," *id*, in that they file a joint tax return as a partnership, but pay no taxes as a partnership. Rather, individual partners are responsible for reporting their distributive shares of a partnership's income and deductions on their personal tax returns, and then paying whatever allocable amount is due.

Until the enactment of TEFRA in 1982, administrative and judicial proceedings regarding the taxation of partnership items were conducted at the level of the individual partner. However, under TEFRA, which became effective for taxable years beginning after September 3, 1982, such proceedings are now conducted at the partnership level. Motivating this change was the inefficiency of the previous system in which duplicative, and possibly even conflicting, determinations of a partnership's tax liability often occurred because of the need to conduct separate proceedings against each partner before tax deficiencies could be assessed or collected. Under TEFRA, one proceeding determines how partnership items will be reported on all of the partners' individual returns. The statute requires partners, on their personal returns, to treat partnership items consistently with the items' treatment on the partnership return. *See* § 6222(a).

When the IRS examines a partnership's tax return, every partner has a right to participate in the proceeding. *See*, § 6224(a). This right is waivable, however, and a partner may opt out of partnership-level proceedings by entering into a binding settlement agreement with the IRS. *See*, § 6224(b), (c). Upon completion of the partnership-level proceeding, the IRS is required to mail to the tax matters partner ("TMP") and to each notice partner[5] a copy of the resulting final partnership administrative adjustment ("FPAA"). *See* § 6223(a)(2). The TMP has 90 days from the date of the FPAA to file a petition for readjustment of partnership items in the United States Tax Court, a United States District Court, or this Court.[6] A court's dismissal of a petition for readjustment (other than dismissal based on another petition's filing priority) is considered to be a decision that the FPAA is correct. *See* § 6226(h).

If a partner chooses not to opt out of a partnership proceeding before an FPAA is issued, no assessment of a deficiency attributable to a partnership item may be made against that partner before 150 days have passed from the date that the FPAA was mailed to the TMP. *See* § 6225(a)(1). If a petition for readjustment is filed in the Tax Court during those 150 days, then no assessment may be made until the Tax Court's decision becomes final. See § 6225(a)(2). Once an assessment is made, however, no suit may be brought for a refund that is "attributable to partnership items," subject to two exceptions not pertinent to this case. § 7422(h). In this administrative scheme, then, a partner's right to participate in the partnership-level proceeding secures the same right that a notice of deficiency is meant to secure in the non-partnership provisions of the IRC: the right to a hearing to contest a tax before its assessment.

This seemingly straightforward partnership procedure encounters a confusing but

---

5. For partnerships with less than 100 partners, a notice partner is any partner whose name and address has been furnished to the IRS at least 30 days before notice is mailed to the TMP. *See* § 6223(a). For partnerships with more than 100 partners, a notice partner must have at least a one-percent interest in the profits of the partnership. *See* § 6223(b)(1).

6. If the TMP does not file within the 90–day period, the other notice partners have 60 days to file such a petition in any of the three courts. If more than one notice partner files a petition, the first one filed in the Tax Court goes forward. If no petition is filed in the Tax Court, the first one properly filed in any other court will go forward, and all other petitions filed will be dismissed. *See* § 6226(b)(4).

crucial wrinkle in its interface with the non-partnership deficiency provisions of the Code, §§ 6211–6216. Under these "standard" provisions, the IRS may not assess a tax without first mailing a notice of deficiency to a taxpayer whose taxes have not been paid in full. After notice is mailed, the taxpayer has 90 days in which to file a petition in the Tax Court for redetermination of the claimed deficiency. *See* § 6213(a). The IRS may not assess the deficiency until the 90 days have passed, or, if the taxpayer files a petition in the Tax Court, until the decision of that court becomes final. *See id.* In lieu of challenging the deficiency in the Tax Court, the taxpayer may pay the tax (following assessment) and sue for its recovery in this Court or a United States District Court "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected," 28 U.S.C.A. § 1346(a)(1) (West 1993), providing that the taxpayer has first filed a claim for a refund with the IRS. *See* IRC § 7422(a).

These two distinct procedural tracks make the classification of an item, either as a "partnership item" or a "non-partnership item," the essential determinant of its tax treatment. Tax adjustments involving "partnership items" require no notice of deficiency; those involving "non-partnership items" do. TEFRA defines a "partnership item" as "any item required to be taken into account for the partnership's taxable year" to the extent that regulations provide that "such item is more appropriately determined at the partnership level than at the partner level." § 6231(a)(3). Examples include a partnership's income, gain, loss, deductions, and credits. In similarly circular fashion, the rules define a "nonpartnership item" as one "which is (or is treated as) not a partnership item." § 6231(a)(4).

*The Specifics of the Problem at Hand*

Our problem begins with the fact that the regular deficiency and refund procedures, *see*

§§ 6211–6216, do not apply to an "overpayment attributable to a partnership item (or an affected item)." § 6230(d)(6). An affected item is defined as "any item to the extent such item is affected by a partnership item." § 6231(a)(5).

There are two types of affected items, and the outcome of this court's inquiry hinges on the distinction. The first involves a "computational adjustment"—i.e., a "change in the tax liability of a partner which properly reflects the treatment under [TEFRA] of a partnership item." § 6231(a)(6). For this type of affected item, regular deficiency procedures do not apply, and the IRS need not issue a notice of deficiency before making an assessment against the taxpayer because the determination of the deficiency is "merely computational." *Woody v. Commissioner*, 95 T.C. 193, 202, 1990 WL 121140 (1990).

The second type of affected item requires factual determinations (other than a computation) to be made at the level of the individual partner. For such items, a deficiency notice is required. *See N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744, 1987 WL 45298 (1987). An example would be the imposition of a penalty by the IRS against a taxpayer for negligently underreporting his share of a partnership's tax liability. The existence of an underpayment by the partner cannot be determined until the partnership's tax liability is determined at the partnership-level proceeding; hence, it is an "affected" item. However, once the partnership's tax liability is established, there remains to be determined whether or not the partner's underpayment was due to the partner's negligence—a factual determination particular to that partner. *See id.* Regular deficiency procedures apply to this type of "substantive"[7] affected item determination, *see* § 6230(a)(2), and the IRS must issue a notice of deficiency to the taxpayer before assessment. *See* § 6213(a).

---

**7.** The court is uncomfortable with the increasingly common use of the word "substantive"—by courts and commentators alike—as a label for this type of affected item. A court's inquiry when these items are raised focuses on the applicability of a partnership-level determination to the partner in question, and not on the "sub-stance" of the underlying determination. In that sense, these items are no more "substantive" than their "computational" counterparts. The items are more accurately described as affected items that depend on "non-computational" partner-level factual determinations.

To complicate matters further, an item's classification as a partnership or non-partnership item is not written in stone. There are several means by which a partnership item can gain non-partnership status. The method most relevant to our inquiry concerns the conclusion of a settlement agreement between a partner and the IRS. As of the date of settlement, the settling partner's partnership items become non-partnership items. *See* § 6231(b)(1)(C). This conversion flows logically from the partner's opting out of the joint partnership procedures.

The classification of the carrybacks and carryovers that are the subject of plaintiffs' refund claim will determine which procedural steps the IRS was required to follow in making its assessment against plaintiffs—namely, whether or not the IRS was required to issue a notice of deficiency prior to assessment. That determination, in turn, will dictate the resolution of the parties' motions, along with the outcome of this case.

### Discussion

*Jurisdiction*

■ As earlier noted, defendant asserts that this court lacks jurisdiction to hear plaintiffs' claims. Specifically, defendant relies on § 7422(h), which provides that "[n]o action may be brought for a refund attributable to partnership items ... except as provided in section 6228(b) or section 6230(c)." The argument, in substance, is that the court cannot hear plaintiffs' claims because those claims relate to the prior determination of a partnership item.

We disagree with defendant's position; the reliance on § 7422(h) is misplaced. TEFRA provides that the partnership items of a partner for a taxable year shall become nonpartnership items as of the date the IRS "enters into a settlement agreement with the partner with respect to such items." § 6231(b)(1)(C). In other words, by virtue of a settlement agreement, items previously cast as partnership items have become individualized; hence, the constraints to suit imposed by § 7422(h) no longer apply.

The reasons underlying TEFRA's conversion of settled partnership items are clear. When a partner enters into a settlement agreement with the IRS, that partner no longer has an interest in the partnership-level proceedings. Subsequent to the settlement, therefore, any determinations reached on the partnership level will not apply to the settling partner. And in like manner, the settlement's resolution of that partner's individual tax status will not bind those partners who choose not to join the settlement agreement. As such, the settling partner essentially has become a free agent to whom the collective approach of TEFRA no longer applies. Logically, therefore, those items of the partner subject to the settlement agreement would no longer be considered "partnership items."

Conversely, the purpose behind § 7422(h)'s jurisdictional bar is similarly clear. If a partner remained free to bring a refund action challenging determinations previously made at the partnership level, then the efficiency gains motivating TEFRA's very enactment would be largely negated. The value of a collective determination of a partnership's tax liability stems from its uniform applicability to all members of the partnership. Allowing individual partners to separately challenge that collective determination would bring about a system of partnership taxation bearing a strong resemblance to the pre-TEFRA regime, in which all determinations were made at the level of the individual partner in the first place. Because a partner who has settled with the IRS has already been removed from the collective processes of TEFRA, the efficiency objectives behind § 7422(h) do not apply to that partner. We are thus left with a statutory provision whose letter and spirit counsel against its application to a party under these circumstances.

Faced with the same question, the court in *Alexander v. United States*, 44 F.3d 328, 331 (5th Cir.1995), held that "execution of a valid settlement agreement between [plaintiff] and the [IRS] would convert partnership items into nonpartnership items, thereby lifting the jurisdictional bar of section 7422(h)." *See also Treaty Pines Investments Partnership v. Commissioner*, 967 F.2d 206, 210 (5th Cir. 1992) (holding that, for jurisdictional purposes, settlement converts partnership items into non-partnership items). Likewise, we

too hold that, under § 6231(b)(1)(C), the refund claim of a partner who has entered into a settlement agreement with the IRS is not "attributable to partnership items" for purposes of § 7422(h).[8] The court thus has jurisdiction to hear plaintiffs' claims.

*Plaintiffs' Claim for Refund of Tax*

■ Given the quagmire of detail into which a discussion of such a complex statutory framework is prone to descend, the relatively simple factual groundwork of plaintiffs' claim must be kept in the forefront of the court's analysis.

In their settlement agreement with the IRS, plaintiffs consented to the IRS's disallowance of Solar's ITC from 1983. Plaintiffs had used their proportionate share of that credit not only by claiming it in 1983, but also by carrying unused portions of the credit back to 1980, 1981, and 1982, and forward to 1984. In the claims now before us, plaintiffs do not contest the IRS's assessment of the deficiency for taxable year 1983 which resulted from the disallowance of the credit. As to that year, they do not insist that a notice of deficiency was required. Rather, they contest the assessment of the deficiencies for the other taxable years to which they carried portions of their share of the credit. These "carrybacks" and "carryovers," they argue, involve "substantive affected items" for which notices of deficiency should have been issued by the IRS prior to assessment, but were not.

Defendant disagrees with this contention. Defendant argues that the application of the partnership-level ITC disallowance to plaintiffs' carryback and carryforward years involves nothing more than a computational adjustment, and that plaintiffs therefore

were not entitled to a notice of deficiency under § 6213(a). To further explain:

As discussed above, when a partnership-level determination is made, the determination is applied to the individual partners by means of a "computational adjustment." Theoretically, this entails nothing more than calculating a partner's proportionate share of the partnership's collective gain or loss as determined in the partnership-level proceeding. Of course, if the calculation is computed erroneously, the partner may bring a refund claim under § 6230(c)(1). Otherwise, however, the only basis for challenging the adjustment would be an attack on the underlying partnership-level determination, and such an attack, as we have seen, can occur under TEFRA only at the partnership level. *See* § 6226. It is precisely because TEFRA recognizes no partner-specific basis for challenging a computational adjustment that the statutory scheme also imposes no requirement upon the IRS to issue a notice of deficiency before assessing additional tax pursuant to such an adjustment.

Plaintiffs urge a different view. They point out that not all determinations of a partnership's tax liability can be applied to an individual partner by simple calculation. There are occasions where non-computational factual questions must be examined before deciding upon the applicability of the collective determination to the individual partner. Examples include the assessment of penalties against a partner for negligence, or questions regarding the amount a partner has "at risk" in the partnership venture. These questions do not bear on the tax liability of the partnership as a whole, and so are not heard at a partnership-level proceeding. Instead, when

---

8. This does not mean, however, that a settlement converts a partnership item into a non-partnership item for all purposes. TEFRA provides that standard deficiency procedures will apply to items converted to non-partnership items, except for those converted through settlement with the IRS. *See* § 6230(a)(2)(A)(ii). Thus, even if an item takes on non-partnership status for purposes of § 7422, the item does not automatically become subject to § 6213's notice of deficiency requirement. Similarly, the item does not lose its partnership status for the purpose of enforcing the settlement agreement itself, as recognized by *Slovacek v. United States*, 36 Fed. Cl. 250,

(1996). Although cited by defendant for the proposition that partnership items are not converted into non-partnership items for purposes of § 7422, *Slovacek's* analysis stands for the broader principle that taxpayers cannot circumvent the express language of their settlement agreements through the conversion of their items to non-partnership status. The court recognized that, if such were the case, a settlement agreement "would not in fact waive or release any of the claims relating to partnership items, even if these were released or waived under the express terms of the settlement agreement." *Id.* at 256.

assessment against an individual partner involves an "affected item" requiring a partner-level determination, the standard, non-TEFRA deficiency procedures apply. § 6230(a)(2)(A)(i).

Plaintiffs insist that their refund claims come under this latter heading. According to plaintiffs, a notice of deficiency was legally required in this case because of the numerous factual questions posed by application of the settlement to the carryback and carryover years. These questions, plaintiffs insist, would require the IRS to review a partner's "individual returns for numerous tax years to determine whether a carryforward or carryback was taken." In addition, they maintain, because the claimed credits are aggregated on the tax return without identification as to their respective sources, the carrybacks and carryforwards "must then be reviewed to determine if they resulted from the partnership items that had been adjusted."

The court does not accept plaintiffs' argument. While the determinations they speak of would indeed need to be made, the court does not believe that they are of the nature contemplated by § 6230(a)(2)(A)(i) so as to justify removal of the carryback and carryover years from TEFRA's procedural framework.

In truth, there is no conceptual distinction between the factual questions identified by plaintiffs and the questions that arise whenever the IRS is called upon to apply its determination of a partnership's claimed credit to an individual partner. If the IRS disallows, for example, a partnership's ITC for a given taxable year, there is no guarantee that an individual partner has claimed his entire proportionate share on that year's return. Only by examination of the partner's filings can the IRS determine how much, if any, of the disallowed credit entered into the partner's reported tax liability for that year. Additionally, of the amount claimed for that year, the IRS also must determine if any portion was attributable to activities not related to the partnership in question, or was itself carried over from another taxable year. Under any circumstances, the IRS will have to examine the partner's filings.

The fact that the application of a partnership-level determination to a partner's carryback or carryover years might require examining records from a number of the partner's taxable years does not change the fact that the nature of the factual determinations to be made is identical to that required by concededly straightforward partner-level applications under TEFRA. Starting from the premise that notices of deficiency are not required when applying a partnership-level determination to a partner's tax return for the same taxable year—otherwise, TEFRA would be meaningless—plaintiffs have failed to show why determinations applied to carryback and carryforward years should require non-TEFRA deficiency procedures. The IRS's need to verify a carryback or carryforward's source from the taxpayer's filings for other years does not, in the court's opinion, transform what would otherwise be a "computational adjustment" into a "substantive affected item."

At oral argument, plaintiffs' counsel relied on notions of equity in portraying a stark picture of what could befall a taxpayer in his clients' position if the IRS were not required to issue a notice of deficiency prior to assessment. Without a notice of deficiency, plaintiffs' counsel pointed out, the taxpayer has no mechanism by which to challenge the validity of the assessment prior to payment. Thus, unless the taxpayer is able to satisfy the deficiency, he or she is cut off from contesting the deficiency in any forum. For example, if the IRS misidentified a claimed carryback or carryforward as arising from a disallowed credit, the taxpayer would have to pay the full amount assessed in order to gain access to a judicial forum to there point out the agency's mistake. According to plaintiffs' counsel, standard procedures under TEFRA should not present a potentially innocent taxpayer with such dire circumstances.

This equity-based argument overlooks what are, in fact, the existing procedures under TEFRA regarding computational errors committed by the IRS in making computational adjustments to a partner's return. Under § 6230(c), a partner may file a refund claim on the grounds that the IRS "errone-

ously computed any computational adjustment" necessary to apply a partnership-level determination to the partner. This standard is broad enough to encompass situations in which a taxpayer alleges that the IRS has incorrectly identified the source of a disputed carryback or carryforward. And obviously, the very nature of a claim for refund requires the taxpayer to have already paid the amount assessed. The fact that § 6230(c) sets forth the result labeled unacceptable by plaintiffs reflects the fundamental flaw of their argument. The court's interpretation of TEFRA—as implicitly cutting off pre-payment review of claims based on misidentified carrybacks or carryforwards—appears to be not only reasonable, but nearly inescapable, when the statute has, in fact, provided exclusively for post-payment challenges of any computational errors arising in the course of a computational adjustment.

Even more fundamental to the precise inquiry at hand is the nature of any partnership-level determination, and more specifically, the inherent function of the settlement agreement in this case. Under plaintiffs' reading of the settlement agreement, they acceded to the IRS's disallowance of Solar's ITC for 1983, and to the assessment of their resulting tax deficiency for that same year. What they did not accede to, they insist, was the imposition of added tax liabilities for years other than 1983.

When divorced from the layers of "legalese" surrounding it, plaintiffs' reading of the settlement agreement makes no sense. They have admitted that the tax credit they claimed over a span of five years was invalid. Yet they insist that the IRS has a right to collect the wrongfully withheld taxes in only one of those five years. For the other four years, plaintiffs claim a right to contest the assessments as if no settlement agreement had been reached. Plaintiffs have not shown that they have a right to withhold a deficiency associated with an admittedly invalid tax credit. The fact that they did not use the entire credit in a single tax year does not insulate their resulting gain from the obvious implications of their admission.

Contrary to plaintiffs' portrayal of case law, no court has held that the application of a partnership-level determination to a partner's carryback or carryover years is an affected item subject to non-TEFRA deficiency procedures. In *Marthinuss v. Commissioner*, 69 T.C.M. (CCH) 1834, 1835, 1995 WL 37632 (1995), the Tax Court noted that a carryback is an affected item "whose existence or amount is dependent in part on determinations to be made at the partnership level." Plaintiffs seize on the court's use of the phrase "in part" and characterize it as a "recognition that a carryback or carryforward adjustment requires (or may require) a partner level factual determination." What the court held, however, was that the carryback adjustment was not within its jurisdiction until the partnership proceeding was closed—otherwise, there would be no partnership-level determination to apply. At the same time, the court recognized that a carryback adjustment cannot be determined entirely through a partnership proceeding, for the IRS must look at the returns of the individual partner before making its assessments. The same is true of adjustments made to the partner's tax liability for the year in question, as discussed above. This non-controversial recognition by the *Marthinuss* court does not equal a holding that carryback adjustments are subject to non-TEFRA deficiency proceedings.

In *Bukove v. Commissioner*, 61 T.C.M. (CCH) 1974, 1991 WL 23483 (1991), the Tax Court allowed a dispute regarding the carryforward of an ITC to be heard in a non-TEFRA proceeding because the taxpayer had introduced no evidence showing that the ITC came from a TEFRA partnership. The court acknowledged that if any part of the carryforward pertained to a TEFRA partnership, the entitlement to the ITC would have to be resolved in a partnership-level proceeding. The plaintiff, however, had failed to show that such was the case. *Bukove* stands for the sensible proposition that a taxpayer cannot escape the reach of the IRS simply through blanket allegations that the disputed tax items stem from a partnership. In the case at bar, the Solar ITC is readily discernable as the source of plaintiffs' disallowed carrybacks.

Finally, in *Durrett v. Commissioner,* 67 T.C.M. (CCH) 2735, 1994 WL 139382 (1994), *rev'd in part,* 71 F.3d 515 (5th Cir.1996), the taxpayers sought to amend their Tax Court petition one week before trial to claim an ITC carryback from 1983 to 1980, the year in suit. They asserted that they should be allowed to amend their petition because the carryback was simply a computational adjustment that could not be challenged by the IRS in the suit covering 1980. The problem with this contention, however, was that the validity of the ITC had never been examined in a partnership proceeding; hence, the IRS could only determine the taxpayers' entitlement to it by examining both the ITC itself and the taxpayers' 1983 liability. Thus, contrary to plaintiffs' argument, the court in *Durrett* never ruled whether carryback adjustments are computational adjustments or affected items requiring partner-level determinations, but only that, if the taxpayers' last-minute amendment were allowed, it would be "difficult to imagine a situation where an opposing party could be more prejudiced." *Id.* at 2740. In this case, by contrast, not only has plaintiffs' asserted tax credit been examined at the partnership level, but its undisputed invalidity is what gives rise to this litigation in the first place.

Courts that have directly addressed the question at issue here have come to the same conclusion as this court. In *Bob Hamric Chevrolet, Inc. v. United States,* 849 F.Supp. 500, 512 (W.D.Tex.1994), the court observed that the amount of a partner's carryover loss stemming from a partnership settlement "is readily determined by a simple computation," and "is not dependent on other potential deductions incurred at the partner level." The court ruled that "[d]etermining the amount of a loss carryover or carryback as a result of a settlement agreement relating to partnership items requires only a computational adjustment." *Id. See also Cummings v. Commissioner,* 71 T.C.M. (CCH) 3193, 3194–95, 1996 WL 334418 (1996) ("[W]e see no merit in petitioner's contention that the NOL carryforward adjustments in this case must be the subject of an affected items notice of deficiency.").

This court holds that adjustments to carryback and carryforward years are affected items requiring only computational adjustments, not partner-level factual determinations, and are therefore not subject to the non-TEFRA deficiency procedures. As such, the IRS assessments of tax deficiencies in this case were valid without prior issuance of notices of deficiency.

*Plaintiffs' Claim for Refund of Penalties and § 6621(c) Interest*

■ Plaintiffs argue that the IRS's assessments of penalties and § 6621(c) interest for taxable years other than 1983 were also unlawful because no statutory notices of deficiency were issued. The resolution of this claim hinges not on whether a notice of deficiency was required in the abstract, but whether, assuming such a requirement, it was in fact waived under the circumstances. Without a valid waiver, the IRS would have been required under § 6213(a) to issue a notice of deficiency to plaintiffs before assessing the § 6659 penalty. The key to plaintiffs' claim is thus whether or not the settlement agreement constituted a valid waiver of their undisputed right to a notice of deficiency prior to assessment.

Plaintiffs concede that they waived their right to a notice of deficiency for 1983 by entering into the settlement agreement, but assert that there was no valid waiver as to the other years. Defendant argues that the settlement agreement effectively waived plaintiffs' rights to deficiency notices for all of the years in question, and that the assessments were therefore valid.

The Form 870–L(AD) for taxable year 1983, as executed by plaintiffs, provided that "the undersigned offers to enter into a settlement agreement with respect to penalties (additions to tax) and [ 6621(c) interest], as shown on the attached schedule of adjustments." The agreement also provided that plaintiffs offered "to waive the restrictions provided in section 6213(A) of the Code and to consent to the assessment and collection" of the penalties and § 6621(c) interest "attributable to the adjustment(s) of the partnership items."

According to plaintiffs, the settlement agreement constituted an effective waiver

only for taxable year 1983. They base this assertion on the fact that 1983 was the only taxable year referred to in either the Form 870–L(AD) or the Schedule of Adjustments. The only references made there were in the headings of both documents, which recited that the settlement covered the tax year 1983.

Plaintiffs fail to acknowledge fully the logical implications of their argument. If the IRS was prohibited from imposing penalties attributable to a settled partnership item unless the years in which those penalties were to be assessed were mentioned explicitly in the settlement agreement, then all of the penalties imposed by the IRS against plaintiffs—including those assessed for taxable year 1983—were invalid. This follows from the nature of the settlement agreement's reference to 1983. To explain:

The headings of the 1983 settlement documents (the Form 870–L(AD) and the Schedule of Adjustments) only refer to 1983 because 1983 was the partnership's taxable year that was being settled. The reference does not designate 1983 as the only year in which plaintiffs' personal tax liability would be affected by the settlement. Moreover, the Schedule of Adjustments does not list any adjustments to plaintiffs' personal tax liability—it lists only the adjustments to the partnership's tax liability for 1983. And, of course, there were no references to 1980, 1981, 1982, or 1984—those years were irrelevant to the settlement of the partnership items.[9]

Thus, the fundamental flaw in plaintiffs' argument is its failure to recognize that the settlement agreement with the IRS was not an explanation of plaintiffs' personal tax lia-

bility. Rather, it was a settlement of the partnership's adjusted tax liability for 1983. Indeed, the IRS could not even calculate the resulting adjustments to plaintiffs' personal tax liability until the partnership item determinations were made—i.e., until the settlement agreement was concluded. *See Woody v. Commissioner*, 95 T.C. 193, 201–02, 1990 WL 121140 (1990). Plaintiffs waived their rights to contest the adjustments to their personal tax liability that would flow from the partnership adjustments outlined in the agreement. To portray that waiver as invalid because the changes to their personal tax liability were not explicitly spelled out in the settlement agreement is to mischaracterize the nature and purpose of that agreement.

The court holds that, by agreeing to the terms of the Form 870–L(AD), plaintiffs validly waived their rights to receive notices of deficiency before being assessed the § 6659 penalty.[10] The waiver covered all years for which the disallowance of the partnership's ITC resulted in an underpayment of taxes by plaintiffs. Plaintiffs' suggested alternative interpretation would make the waiver language, and the entire settlement of penalties and § 6621(c) interest, meaningless.

## Conclusion

The Court grants defendant's motion for partial summary judgment, and denies plaintiffs' motion for summary judgment. Plaintiffs did not have a right to notices of deficiency regarding the IRS's application of their settlement agreement to carryback and carryover years. The underpayments of tax, and the accompanying penalties and § 6621(c) interest, were validly assessed against them. Judgment will be postponed for 60 days, pending the parties' resolution of certain issues regarding interest computa-

---

9. For the same reason, no adjustments were listed on the "Schedule of Adjustments" for the settlement agreement as to the partnership's 1984 taxable year. Contrary to plaintiffs' puzzling interpretation, the lack of adjustments did not mean that plaintiffs did not personally owe anything for that year, only that no changes were made to the partnership's tax liability for that year. Plaintiffs' 1984 tax deficiency, penalty, and § 6621(c) interest stemmed from their carry-

forward of their distributive share of the partnership's 1983 adjustments.

10. The court declines to resolve the dispute between defendant and plaintiffs as to whether or not the "Explanation of Adjustments," included with the IRS's solicitation of plaintiffs' settlement offer, should be considered as part of the final settlement agreement. The issue is moot because the Form 870–L(AD) and the Schedule of

tion.[11]

## ORDER

## DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant moves this court to reconsider the portion of its opinion dated April 21, 1997, in which the court found that it had jurisdiction over plaintiffs' refund claims concerning partnership items. For the following reasons, defendant's motion is denied.

Section 7422(h) of the Internal Revenue Code prohibits any action "for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c)." According to defendant, because plaintiffs' claims were founded on allegations that the IRS improperly assessed tax deficiencies resulting from the adjustment of partnership items, the court's exercise of jurisdiction over those claims was prohibited by the language of § 7422(h).

Defendant portrays as misplaced the court's reliance on § 6231(b)(1)(C), which provides that partnership items become nonpartnership items at the time of a settlement agreement between the IRS and the partner. Defendant argues that this transformation is not applicable to the jurisdictional inquiry because § 7422(h) adopts only "the definition of § 6231(a)(3) . . . not [also] the proviso set forth in § 6231(b)(1)(C)."

There is no statutory support for defendant's assertion that § 7422(h)'s reference to partnership items does not include the limitation set forth by § 6231(b)(1)(C). To the contrary, § 6231(b)(1) provides that, "[f]or purposes of this subchapter, the partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date . . . (C) the Secretary enters into a settlement agreement with the partner with respect to such items." By its very terms, then, § 6231(b)(1) is not an optional proviso whose relevance is contingent upon express

invocation, but is a blanket modification, applicable to the operation of the entire subchapter, including § 6231(a)(3)'s definition. And the definition of partnership items contained in § 6231(a)(3) explicitly includes only those items "to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." Thus, the terms of § 6231(a)(3) do not provide a freestanding, readily isolated definition of "partnership item"; rather, the definition could more sensibly be understood to incorporate—albeit implicitly—the substance provided by subsequent subsections. The court thus finds no interpretive significance in the fact that § 7422(h) refers to "partnership items (as defined in section 6231(a)(3))," instead of "partnership items (as defined in section 6231(a)(3), subject to the proviso contained in section 6231(b)(1)(C))."

Defendant also argues that the language of certain provisions of TEFRA highlights the error of the court's statutory interpretation. Defendant points to the listed exceptions to § 7422(h)'s prohibition—§ 6228(b) and § 6230(c)—as both concerning partnership items that have been converted to nonpartnership items. According to defendant, the court's analysis would render these exceptions unnecessary.

Section 6228(b) addresses situations in which a partner files an administrative adjustment request under § 6227(c), and the IRS elects to treat the partnership items in question as nonpartnership items pursuant to § 6231(b)(1)(A). In that case, the partner "may bring an action under section 7422 with respect to such claim at any time within 2 years of the mailing of such notice." § 6228(b)(1)(B). Defendant argues that, if § 6231(b)(1)(C)'s conversion of settled partnership items into nonpartnership items removes the jurisdictional bar of § 7422(h), then logically so would conversion under subparagraph (A) of the same section. As such,

---

Adjustments were sufficient to constitute a valid waiver of plaintiffs' § 6213(a) rights.

**11.** These issues are not identified beyond defendant's explanation that "issues of material fact

may exist with respect to jurisdiction and computational matters regarding certain interest claims of plaintiffs."

listing § 6228(b) as an exception to § 7422(h) would be superfluous—*i.e.*, if all converted nonpartnership items were outside the scope of § 7422(h)'s prohibition to begin with, then an exception addressing certain converted nonpartnership items would be unnecessary.

As shown, the terms of § 6228(b) explicitly provide that if items subject to administrative adjustment requests are subsequently treated as nonpartnership items by the IRS, then a refund claim may be brought under § 7422. There is no mention in § 6228(b) of § 7422(h) as posing any sort of jurisdictional obstacle to such a claim. Conceivably, the reference to § 6228(b) was included in § 7422(h) to avoid possible confusion as to whether an action expressly allowed in another section of the Internal Revenue Code could, in fact, be maintained. In other words, the inclusion of § 6228(b) as an exception to § 7422(h) may have been motivated by a desire to avoid linguistic confusion, and not by the conviction that, without an express exception, actions under § 6228(b) would otherwise be barred. In this light, because TEFRA does not provide expressly for refund claims stemming from procedural deficiencies in the application of settlement agreements, there would be no impetus for § 7422(h)'s framers to include a specific exception addressing such situations. The absence of an exception would not, by itself, mean that § 7422(h) applies to those settled items in the first place.

Defendant also focuses on § 6230(c)(1)(A), which allows a partner to file a refund claim on the grounds, among others, that the IRS erroneously computed "any computational adjustment necessary . . . to apply to the partner a settlement." And subparagraph (B) of that section allows a claim on the grounds that the IRS "failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement." According to defendant, the language of these provisions is another indication that a settled partnership item is still subject to § 7422(h)'s prohibition despite its conversion under § 6231(b)(1)(C). For if settlement was enough to take items out from under the reach of § 7422(h), there would be no reason to refer to settled items in the language of § 7422(h)'s exceptions.

Plaintiffs point out that the precise language of § 6231(b)(1)(C) provides for the conversion of a partner's partnership items only upon the IRS's entering of a settlement agreement "with the partner." As such, plaintiffs argue, when a tax matters partner binds non-notice partners by entering into a settlement, *see* § 6224(c)(3), or when a pass-thru partner binds "indirect partners" by entering into a settlement, *see* § 6224(c)(1), then the affected partnership items are not converted to nonpartnership status. According to plaintiffs, these are the settled items referred to in § 6230(c)(1) because, barring an exception, these items would still be subject to the prohibition of § 7422(h).

The statute gives no clear indication of whether defendant's or plaintiffs' reading of § 6230(c)(1) is correct. And there is no way of knowing whether the court's suggested alternative reading of § 6228(b) is valid. In any event, defendant's reading of the interplay among TEFRA's myriad provisions carries an interpretive appeal that reveals a troubling lack of cohesion within the statutory scheme. "That our tax laws can at times be in such disarray is a discomforting thought." *Commissioner v. Estate of Hubert,* —— U.S. ——, ——, 117 S.Ct. 1124, 1134, 137 L.Ed.2d 235 (1997) (O'Connor, J., concurring). However, even assuming the accuracy of defendant's interpretation, the court is left with a stark choice: if, as the court has held, § 7422(h) does not apply to the items subject to plaintiffs' settlement with the IRS, then TEFRA may suffer from—among other ailments—a measure of imprecision in the terms of certain of its provisions; if, on the other hand, § 7422(h) does apply to the settled items, then plaintiffs are effectively shut out of court.

Defendant goes on to portray as both a "curious proposition" and "inconsistent result" the court's implicit holding that plaintiffs' refund claims are within the court's jurisdiction, but that plaintiffs cannot file claims for any partnership items that were released or waived in the settlement. To begin with, plaintiffs' refund claims were founded on their alleged rights to receive

notices of deficiency prior to the IRS's assessment of tax deficiencies for carryforward and carryback years—an issue distinct from the substance of the partnership items settled pursuant to Part I of the agreements. The court first ruled that it had jurisdiction to hear plaintiffs' refund claims, and then ruled that they had no rights to notices of deficiency under the circumstances. This ruling was not based on the effect of the settlement agreements *per se*, but rather on the fact that the adjustments to the carryforward and carryback years were in the nature of computational adjustments, with no accompanying rights to notices of deficiency. The effect of the settlement agreements themselves was dispositive only as to plaintiffs' claims for refund of penalties and § 6621(c) interest. Under Part II of the agreements, the court ruled that plaintiffs validly waived their acknowledged rights to notices of deficiency prior to assessment of those items. Even if the court's holding were based solely on the effect of the settlement agreements, the court fails to see any inconsistency in exercising jurisdiction in order to examine the merits of a claim, and subsequently ruling that, on the merits, plaintiffs are not entitled to relief.

As discussed in the opinion, the settlement converted plaintiffs' partnership items into nonpartnership items. At that point, the court held, § 7422(h) became no longer applicable to plaintiffs' potential refund claims. The lack of a jurisdictional bar did not leave defendant unjustifiably exposed to liability, however, for even though the court could entertain plaintiffs' claims on the merits, the settlement cut off remedies as to any items covered by the agreements. The agreements' preclusive effect does not, as defendant implies, make the courts' exercise of jurisdiction superfluous. The taxpayer may indeed be foreclosed from raising challenges going to the substantive adjustments concluded pursuant to the settlement, but that does not warrant potentially subjecting the taxpayer to a variety of procedural irregularities or injustices that might arise over the course of assessment.

We have now come to the crux of the matter: § 7422(h), in defendant's view, would deny the taxpayer any recourse to a judicial forum to challenge any aspect of IRS actions—apart from errors in computation or the failure to refund an overpayment under § 6230(c)—once the bottom line of the settlement agreement is signed. In this case, plaintiffs' assertion that a notice of deficiency was wrongfully denied them proved to be without merit. But the court's ultimate holding in favor of defendant is a far cry from ruling that the court should never even have heard plaintiffs' claims in the first place. Granted, defendant's interpretation of TEFRA's seemingly incongruous layers of mind-numbing detail is not without appeal. More compelling, however, is the fact that, under defendant's version of the statutory scheme, plaintiffs could not have raised what was a legitimate and vital claim regarding their procedural rights—a claim for which TEFRA has otherwise not provided an opportunity to be heard. As such, the court reaffirms its earlier analysis, and defendant's motion for reconsideration is denied.