[No. AO23607. First Dist., Div. Four. Dec. 29, 1983.]

CITY OF OAKLAND, Petitioner, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
OAKLAND RAIDERS et al., Real Parties in Interest.

---

**COUNSEL**

David A. Self, Laurence P. Horan, Horan, Lloyd & Karachale, Michael W. Stamp and Richard E. Winnie, City Attorney, for Petitioner.

No appearance for Respondent.

Moses Lasky, John E. Munter, Lasky, Haas, Cohler & Munter, Barrie Engel, Hardin, Cook, Loper, Engel & Bergez, William Mathews Brooks, Brooks & Hughes, Parnie, Barelli & Soskin, Ira Reiner, City Attorney, Gary R. Netzer and Norman L. Roberts, Assistant City Attorneys, and Edward C. Dygert, Deputy City Attorney, Joseph Alioto, De Witt W. Clinton, County Counsel, Donald K. Byrne, Chief Deputy County Counsel, and Dennis M. Devitt, Deputy County Counsel, for Real Parties in Interest.

---

**OPINION**

**POCHÉ, Acting P. J.**—In *City of Oakland* v. *Oakland Raiders* (1982) 32 Cal.3d 60 [183 Cal.Rptr. 673, 646 P.2d 835] (*Raiders I*), the California Supreme Court reversed a summary judgment which had dismissed with prejudice this action by petitioner, City of Oakland (City), to acquire by eminent domain the property rights associated with the ownership by real parties in interest, Oakland Raiders et al. (Raiders), of a professional football team which is a franchise member of the National Football League (NFL). In so doing the high court found that the power of eminent domain could be exercised for the acquisition of the intangible property in question and that the acquisition and operation of a sports franchise could be an appropriate municipal function. Thus the court concluded, "[i]f such valid public use can be demonstrated," the City had the power to acquire by eminent domain any property necessary to accomplish that use. (*Id.*, at p. 72.) Accordingly, the case was remanded to the trial court "for a full evidentiary trial on the issues on the merits," so that City could have the opportunity to show "valid public use for its proposed action . . . ." (At pp. 63, 76.)

On retrial, the objections to the taking were ordered bifurcated from the issue of compensation. (Cf. Code Civ. Proc., § 1260.110, subd. (a).)[1] At

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

the conclusion of the first phase of the trial respondent, the Superior Court of Monterey County, rendered a decision sustaining five of the Raiders' objections to the taking, and entered judgment dismissing City's complaint.

In this proceeding, City asks us to issue a peremptory writ of mandate compelling vacation of that judgment because it is contrary to the law of the case established by the Supreme Court in *Raiders I*. We agree with that characterization of the judgment and accordingly grant the requested relief.

## I. *Procedural Background*

City commenced this eminent domain action on February 22, 1980, in Alameda County. A temporary restraining order prohibiting transfer of the franchise was issued on that day and a preliminary injunction to the same effect followed on April 17, 1980. (*City of Oakland* v. *Superior Court* (1982) 136 Cal.App.3d 565, 568 [186 Cal.Rptr. 326] (*Raiders II*).) The case was thereafter transferred to Monterey County pursuant to section 394. Raiders then successfully moved to bifurcate the trial and specially set for trial the issue of City's right to take. They then moved for summary judgment. The trial court concluded that City had no authority to acquire the property sought to be condemned and entered judgment dismissing the action.

City appealed and the California Supreme Court reversed and remanded with directions to hold a full evidentiary hearing on the merits. (*Raiders I, supra*, 32 Cal.3d at p. 63.)

After the remittitur issued, City unsuccessfully moved to reinstate the preliminary injunction, and this court issued a peremptory writ of mandate ordering the trial court "to hold an evidentiary hearing on the application for reinstatement of the preliminary injunction." (*Raiders II, supra*, 136 Cal.App.3d at p. 571.) Following a hearing thereon, the court reinstated the preliminary injunction which ordered Raiders to play all "1983 preseason, regular season and post 1983 season home games" in Oakland "unless and until judgment after trial is entered in favor of [Raiders] before the beginning of the 1983 season."

Trial on the eminent domain action commenced on June 30, 1983. The trial court rendered its tentative decision on July 22, 1983, which indicated its intent to find in favor of real parties in interest, to dismiss the action, and to discharge the preliminary injunction. Therein the court stated that its tentative decision would serve as the statement of decision (cf. Cal. Rules of Court, rule 232(a)) "unless within 10 days either party specifies controverted issues or makes proposals not covered" therein.

City did neither but instead on August 1, 1983, filed a petition for a writ of prohibition and/or mandate and an application for stay in the California Supreme Court. That court transferred the cause to this court on August 2. Three days later we summarily denied both the petition and the request for a stay.

City immediately petitioned the Supreme Court for a hearing and for injunctive relief. In the interim, the trial court rendered a final judgment in accordance with the statement of decision. On August 18, the Supreme Court granted a hearing and transferred the cause to this court with directions to issue "an alternative writ." Pursuant to that directive on August 26 we issued an alternative writ of mandate but denied City's request for a stay of the judgment.

## II. *Propriety of Mandate Review*

■ Initially we reject Raiders' notion that this writ proceeding is improper because City has an adequate remedy at law by way of direct appeal from the final judgment. (Cf. § 904.1, subd. (a).) By transferring this cause to us with directions to issue an alternative writ, the California Supreme Court has necessarily determined that City has no adequate remedy in the ordinary course of law and that this case is a proper one for the exercise of our original jurisdiction. (*Mehr* v. *Superior Court* (1983) 139 Cal.App.3d 1044, 1049 [189 Cal.Rptr. 138]; *Amie* v. *Superior Court* (1979) 99 Cal.App.3d 421, 424 [160 Cal.Rptr. 271]; *Department of General Services* v. *Superior Court* (1978) 85 Cal.App.3d 273, 279 [147 Cal.Rptr. 422]; cf. *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 492 [96 Cal.Rptr. 553, 487 P.2d 1193]; *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 944-945 [92 Cal.Rptr. 309, 479 P.2d 669], cert. den., 401 U.S. 1012 [28 L.Ed.2d 549, 91 S.Ct. 1266].) This determination is not altered by the pendency of the direct appeal from the final judgment. (See *Lee* v. *Superior Court* (1961) 196 Cal.App.2d 161, 164 [16 Cal.Rptr. 268].) Accordingly the merits of the petition must be reached.

Here the petition argues that the trial court "intends and threatens to take action which directly and clearly violates the determinations made by [the Supreme] Court. Respondent's intended and threatened action is not based upon any additional evidence or facts which were not before [the Supreme] Court, yet respondent intends and threatens to enter judgment based upon conclusions foreclosed by the law of this case." Our role is to review the trial court's action in light of the Supreme Court's decision in *Raiders I* and to determine whether there is basis for issuance of a peremptory writ of mandate compelling the trial court to vacate the judgment. There is.

## III. *Review*

The trial court gave five reasons for its conclusion that City does not have the right to take the property in question: (1) the property is not located entirely within the boundaries of Oakland; (2) there is no reasonable probability that City will devote the property to a public use within seven years; (3) the property is not subject to acquisition by eminent domain "for the stated purpose"; (4) City did not adopt a resolution of necessity that conclusively establishes the matters set forth in section 1240.030, did not adopt a resolution of necessity prior to the commencement of the eminent domain action, and did not provide Raiders with the notice and opportunity to be heard as required by law; and, (5) the public interest and necessity required neither the proposed project nor the acquisition of Raiders. Each reason will be reviewed separately.

*Location of the intangible property*

█ The first objection to the taking was that it was in violation of the territorial limitation on a municipality's exercise of its condemnation power. (See § 1240.050.)[2]

In *Raiders I,* the California Supreme Court questioned whether this statute had any application to intangible property which, by its nature, has no permanent situs: "It is at least arguable that this section was intended to apply only to property which can and does have some situs, such as land and the rights related thereto. As the Raiders [acknowledge], an intangible right has no territorial 'situs in fact.' " (*Raiders I, supra,* 32 Cal.3d at p. 74.)

"[A]ssuming" the statute's applicability, the Supreme Court found that it appeared to be met on the record before it: "Oakland is the principal place of business of the partnership. It is the designated NFL-authorized site for the team's 'home games.' It is the primary locale of the team's tangible personality." Although the territorial restrictions had been satisfied "[p]rima facie," the trial court was not prevented from concluding otherwise on appropriate factual record: "We readily acknowledge that there may be similar or additional factors which would be relevant in determining the appropriate scope of a city's power of condemnation." (*Id.,* at pp. 74-75.)

On remand the trial court concluded that the territorial restrictions do apply to intangibles. Otherwise, in its view, "intangible property every-

---

[2]Section 1240.050 provides: "A local public entity may acquire by eminent domain only property within its territorial limits except where the power to acquire by eminent domain property outside its limits is expressly granted by statute or necessarily implied as an incident of one of its other statutory powers."

where is a potential target of city condemnation." The court next concluded that the territorial restrictions of section 1240.050 were not met because the property "cannot be said to be located entirely within the City boundaries."

As did the Supreme Court, we severely question whether section 1240.050 has any applicability to property that has no situs such as the intangible property here. But we are not required to answer that question because viewing all of the evidence it can be determined as a matter of law that the only possible situs for the intangible property is the City of Oakland.

The evidence relied upon by the trial court as sufficient to rebut the prima facie case found by the Supreme Court is irrelevant. That evidence was: the general partners do not reside in Oakland, nor do some of the coaches, football players and other employees; the franchise territory of Raiders under the NFL Constitution includes the City of Oakland and the surrounding 75 miles; Raiders, under the NFL Constitution, have the right to play teams in franchise territories across the United States; Raiders share in NFL television contract proceeds "flowing in from across the country"; and Raiders' "economic and recreational influence" was not confined to Oakland.[3]

That evidence cannot be characterized as "an appropriate factual record" (*Raiders I, supra*, 32 Cal.3d at p. 75), upon which the trial court could find that the prima facie case had been rebutted. That Raiders played games outside of the City of Oakland against other NFL franchises or that the franchise defines the home territory as being a 75-mile radius were not new factors. Reliance on residency of customers of the business simply is misplaced: it would be the same as saying that the City of Oakland could not condemn property to build a park near the Berkeley border because Berkeley residents might make more use of the park than Oakland residents.

We hold that as a matter of law that Raiders did not rebut the prima facie showing that the property was located within the City of Oakland. The territorial restrictions of section 1240.050 were met.

*No reasonable probability that the property will be devoted to a public use within seven years*

■ The second objection sustained to the taking was that there was no reasonable probability that City would devote the property to a public use

---

[3]By "economic and recreational" influence the trial court was referring to evidence that the majority of season ticket holders resided outside the City of Oakland, that "the recreational use is by Raider fans in dozens of California cities who identify with the team almost, if not as much as the loyal fans living in Oakland," and that Raiders had an economic impact on five Bay Area counties (Alameda, Contra Costa, San Francisco, Santa Clara and San Mateo).

within seven years. (§ 1250.360, subd. (d).) This objection stems from the statutory limitation for a taking for future use contained in section 1240.220, subdivision (a): "Any person authorized to acquire property for a particular use by eminent domain may exercise the power of eminent domain to acquire property to be used in the future for that use, but property may be taken for future use only if there is a reasonable probability that its date of use will be within seven years from the date the complaint is filed or within such longer period as is reasonable." The burden is on the objecting defendant to prove that there is no reasonable probability that the date of use will be within seven years from the date the complaint is filed. (§ 1240.230.)

Here the trial court found that burden had been sustained because "it is distinctly probable that permitting this condemnation would lead to a quagmire of disputes and legal entanglements with little expectation that the franchise would ever be devoted to the public use stated."[4] However, the Legislature has made it clear that in calculating the probability of use within seven years, one does not include "delay caused by extraordinary litigation." (§ 1240.210.)[5] Thus any potential delay attributable to litigation between City and NFL should not have been relied upon in calculating the reasonable probability of use within seven years.

The only remaining factors relied upon by the trial court are the possibility that the coach and other staff might leave the team if the action were successful, and that a formal retransfer agreement had not yet been arranged by City. These matters, by no stretch of the imagination, amount to a reasonable probability that City could not put the property to use within seven years.[6] Accordingly, the trial court erred as a matter of law in sustaining this objection to the taking.

---

[4]The "factors" leading to this conclusion are: the lack of "reliable evidence" with respect to the action NFL membership would take in event that the condemnation action succeeded; the "possibility that Allen Davis and other staff may leave the team if it is taken"; and that a retransfer agreement had not been "worked out with a new owner, although the City has taken steps in the direction of drafting models."

[5]Section 1240.210 provides in part: "For the purposes of this article, the 'date of use' of property taken for public use is the date when the property is devoted to that use . . . . In determining the 'date of use,' periods of delay caused by extraordinary litigation or by failure to obtain from any public entity any agreement or permit necessary for construction shall not be included."

This "article," meaning article 3, includes section 1240.220 which is the basis for the objection contained in section 1250.360, subdivision (d). (See legis. committee com. to § 1250.360, 19 West's Ann. Code Civ. Proc. (1982 ed.) pp. 669-670; Deering's Ann. Code Civ. Proc. (1981 ed.) p. 149.)

[6]City presented evidence of a planning team which had developed alternative operation and acquisition plans depending on various factors such as date of possession, the retention of Allen Davis and other employees, etc. While City had not decided which plan to implement, an advisory committee known as the "Oakland Raiders Franchise Advisory Committee" had been established.

*Condemnation does not lie for the stated purpose*

■ The next objection sustained was that the described property "is not subject to acquisition by the power of eminent domain for the stated purpose." (§ 1250.360, subd. (e).) The legislative committee comment to this subdivision succinctly explains the scope of this objection: "Condemnation for certain specified purposes is not available in the case of some land. For example, a city may not acquire by eminent domain an existing golf course for golf course purposes. Gov. Code § 37353(c). Property appropriated to a public use may not be taken except for more necessary or compatible uses. Sections 1240.510 and 1240.610. Cemetery land may not be taken for rights of way. Health & Saf. Code §§ 8134, 8560, 8560.5. Certain land in the public domain may not be taken at all. Pub.Res.Code § 8030. . . ." (Legis. committee com. to § 1250.360, 19 West's Ann. Code Civ. Proc. (1982 ed.) p. 670; Deering's Ann. Code Civ. Proc. (1981 ed.) p. 150.)

Thus the sole question under this objection was whether the property sought to be taken is subject to acquisition for the stated purpose. The answer to this question is found in *Raiders I*: "the acquisition and, indeed, the operation of a sports franchise may be an appropriate municipal function. If such valid public use can be demonstrated, the statutes discussed herein afford City the power to acquire by eminent domain any property necessary to accomplish that use." (*Id.*, 32 Cal.3d at p. 72.) In other words, the California Supreme Court established that the property sought to be taken was subject to acquisition by the power of eminent domain for the stated purpose if a valid public use was established at trial. Because any objection premised on section 1250.360, subdivision (e), was affirmatively rejected in *Raiders I,* the trial court exceeded its jurisdiction in reaching a contrary result.

*Procedural irregularities in adoption of the resolution of necessity*

■ The fourth objection sustained centered around alleged procedural defects in the adoption of the resolution of necessity by City. (Cf. § 1250.370, subd. (a).)[7] Here too, the doctrine of the law of the case precluded the trial court from sustaining this objection.

The facts are undisputed: City filed this action on February 22, 1980, prior to the adoption of a resolution of necessity. Raiders were given notice

---

[7]Section 1250.370 provides in pertinent part: "In addition to the grounds listed in Section 1250.360, grounds for objection to the right to take where the plaintiff has not adopted a resolution of necessity that conclusively establishes the matters referred to in Section 1240.030 include: [¶] (a) The plaintiff is a public entity and has not adopted a resolution of necessity that satisfies the requirements of Article 2 (commencing with Section 1245.210) of Chapter 4. . . ."

thereof that same day. Four days later a resolution of necessity was adopted by the city council, and on February 27, City filed an amendment to the complaint alleging that such had occurred. Thereafter on March 11, 1980, Raiders were afforded an opportunity to be heard before the city council and on that same day the city council reaffirmed the adoption of the resolution of necessity.

Generally, "[a] public entity may exercise the power of eminent domain only if it has adopted a resolution of necessity that meets the [statutory requirements]." (§ 1240.040.) The public entity may not commence the action unless "its governing body has adopted a resolution of necessity that meets the requirements of this article." (§ 1245.220.) Further, the governing body may adopt the resolution of necessity "only after the governing body has given each person whose property is to be acquired . . . notice and a reasonable opportunity to appear and be heard" as set forth in section 1245.235.

It is also undisputed that the failure of the City to strictly comply with these statutory requirements was raised by Raiders as a defense several times much prior to the evidentiary hearing. This challenge was twice made by the Raiders in the proceedings before summary judgment was entered. More importantly this challenge—which if applicable is an absolute bar—was argued by the Raiders to the California Supreme Court in support of the judgment which dismissed the action. By its ruling in *Raiders I* reversing that judgment of dismissal, the California Supreme Court necessarily determined that the defense was unavailing and determined that again when it denied Raiders' petition for a rehearing, which petition specifically repeated the challenge.[8]

■ Simply stated the doctrine of " 'law of the case' " requires a trial court and reviewing courts to follow the principles laid down upon a former appeal in the same case, whether those principles are correctly or incorrectly decided. (*People* v. *Shuey* (1975) 13 Cal.3d 835, 841 [120 Cal.Rptr. 83, 533 P.2d 211]; *Tally* v. *Ganahl* (1907) 151 Cal. 418, 421 [90 P. 1049]; *Lindsey* v. *Meyer* (1981) 125 Cal.App.3d 536, 541 [178 Cal.Rptr. 1].) The doctrine applies with equal force to legal determinations whether they are express or implied. (See, e.g., *Steelduct Co.* v. *Henger-Seltzer Co.* (1945) 26 Cal.2d 634, 642 [160 P.2d 804]; *Lindsey* v. *Meyer, supra,* 125 Cal.App.3d at p. 541; see generally 6 Witkin Cal. Procedure (2d ed. 1971) Appeal, § 649, pp. 4566-4568.) Thus where a particular point is essential to the decision, and the appellate court could not have rendered its decision

---

[8]Pursuant to Evidence Code sections 452, subdivision (d)(1), and 459 we take judicial notice of all briefs and the record before the Supreme Court in *Raiders I.*

without its determination, a necessary conclusion is that the point was impliedly decided, even though the point was not expressly mentioned in the decision. (*Lindsey* v. *Meyer, supra,* at p. 541.)

■ Here the question of the procedural bar was necessarily determined adversely to Raiders in *Raiders I;* otherwise the Supreme Court could not have reversed the judgment and remanded for trial. That determination, although not express, became law of the case. Accordingly, on remand the trial court was foreclosed—as is this court—from redetermining the legal effect of the late filing of the resolution of necessity and the late notice to Raiders.

*Public interest and necessity do not require the proposed project*

■ The final objection sustained was that "the public interest and necessity do not require the proposed project, nor the acquisition of the Raiders." (Cf. § 1250.370, subds. (b) and (d).) This inquiry was also foreclosed.

The objections to the taking listed under section 1250.370 lie only where the plaintiff "has not adopted a resolution of necessity that conclusively establishes the matters referred to in Section 1240.030."[9] In other words, these objections come into play only where the public entity has not adopted a valid resolution of necessity or if it has the resolution is not conclusive on matters contained in section 1240.030. (See legis. committee com. to § 1250.370, 19 West's Ann. Code Civ. Proc. (1982 ed.) p. 672; Deering's Ann. Code Civ. Proc. (1981 ed.) p. 151.)

The trial court found jurisdiction to review the section 1240.030 objections on the basis that the resolution of necessity was not adopted in accordance with the procedural requirements. As we have demonstrated, that matter was implicitly determined to the contrary by the California Supreme Court in *Raiders I,* and the doctrine of law of the case precluded the trial court from reaching the contrary legal conclusion.

The objections contained in section 1250.370 also lie where the plaintiff has not adopted a resolution of necessity that "conclusively establishes the matters referred to in Section 1240.030." The resolution of necessity con-

---

[9]Section 1240.030 provides: "The power of eminent domain may be exercised to acquire property for a proposed project only if all of the following are established: [¶] (a) The public interest and necessity require the project. [¶] (b) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury. [¶] (c) The property sought to be acquired is necessary for the project."

clusively determines those matters (§ 1245.250)[10] except in limited situations: (1) where the described property is not located entirely within the boundaries of the public entity (§ 1245.250, subd. (b)); or (2) where the adoption or contents of the resolution of necessity was "influenced or affected by gross abuse of discretion by the governing body" (§ 1245.255, subd. (b)); or (3) was the result of bribery (§ 1245.270).

The extraterritorial exception is inapplicable because as we have earlier in this opinion determined, the taking met the territorial requirements of section 1240.050. The second exception—gross abuse of discretion—was not relied upon by the trial court.[11] The third exception, bribery, was not raised below.

In sum, the trial court was foreclosed from inquiring into whether the public interest and necessity required the proposed project (§ 1250.370, subd. (b)) and whether the property was "necessary" for the proposed project (*id.*, subd. (d)). It erred in sustaining these objections to the taking.

*Remaining objections*

The trial court did not reach other objections, the most important of which is, in our view, whether the stated purpose is a public use. (Cf. § 1250.360, subd. (b).)

On remand, without the taking of additional evidence, the trial court is directed to decide only upon the validity of the objections upon which it has previously not ruled. If each of the remaining objections raised previously by Raiders is found to be without merit the court is directed to proceed to the compensation phase of the trial. If any objection is sustained the court shall issue judgment accordingly.

### IV. *Conclusions*

Each of the five reasons given by the trial court for its determination that City does not have the legal right to take the property is, as a matter of law, incorrect. The determination whether other valid reasons for that same conclusion have been established must await the ruling of the trial court.

---

[10]Section 1245.250, subdivision (a), provides: "Except as otherwise provided by statute, a resolution of necessity adopted by the governing body of the public entity pursuant to this article conclusively establishes the matters referred to in Section 1240.030."

[11]However, the court did *comment* on the concept of gross abuse by noting that such could be found to the extent that there were: (1) intentional procedural defects in the adoption of the resolution of necessity; and, (2) the "lack of evidence of necessity." Neither ground is sufficient to support a finding of gross abuse of discretion.

Let a peremptory writ of mandate issue ordering respondent to: (a) vacate the judgment; and, (b) proceed in accordance with the views expressed herein to determine, without the taking of additional evidence, the remaining objections submitted to it but not previously ruled upon.

Panelli, J., and Williamson, J.,* concurred.

Petitions for a rehearing were denied January 19, 1984, and the petitions of real parties in interest for a hearing by the Supreme Court were denied March 22, 1984. Broussard, J., did not participate therein.

*Assigned by the Chairperson of the Judicial Council.