**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

ALLEN DAVIS; CAROL DAVIS,
        *Plaintiffs-Appellees*,

v.

UNITED STATES OF AMERICA,
        *Defendant-Appellant*.

</td>
<td>

No. 13-16458

D.C. No.
3:11-cv-04316-
EDL

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Northern District of California
Elizabeth D. Laporte, Magistrate Judge, Presiding

Argued and Submitted
November 17, 2015—San Francisco, California

Filed January 25, 2016

Before: Sidney R. Thomas, Chief Judge and Sandra S.
Ikuta and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[*]

### Tax

Reversing a judgment of the district court in an income tax refund action brought by Al Davis, former principal owner of the Oakland (and Los Angeles) Raiders, and his wife Carol Davis, the panel held that a breach of a Closing Agreement between the Internal Revenue Service (IRS) and the partnership that formally owned the Raiders did not invalidate the tax assessments, which were properly assessed within the statute of limitations.

Davis and his wife were partners in a partnership that entered into a settlement with the IRS in which the partners had a designated amount of time to review and comment on the IRS's proposed tax liability calculations before any assessments were made. The IRS admittedly breached the Closing Agreement by making certain assessments without giving Davis a second opportunity to review its calculations.

The panel held that the IRS's breach of contract entitled Davis to a contractual remedy but did not invalidate the assessments. The panel noted that the breach did not prevent Davis from challenging the assessed amounts and seeking consequential damages in an administrative refund claim or a refund action, which he did not do.

The panel also held that the assessments were timely. Applying the plain language of I.R.C. § 6231(b)(1)(C), the

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

panel held that the IRS does not "enter into a settlement agreement with the partner" when it enters into a settlement agreement with the tax matters partner, and the individual partner is bound merely by operation of the tax court's decision to which the partner is a party. Because the Closing Agreement and stipulations were not a "settlement agreement with" Davis within the scope of I.R.C. § 6231(b), the panel held that the tax assessments were timely, as they occurred within one year after the Tax Court decision became final.

## COUNSEL

Kathryn Keneally, Assistant Attorney General, Richard Farber, Andrew M. Weiner (argued), Attorneys, Tax Division, Department of Justice, Washington, D.C., for Defendant-Appellant.

Steven L. Mayer (argued), Kenneth G. Hausman, Stuart S. Lipton, Julian Y. Waldo, Arnold & Porter LLP, San Francisco, California, for Plaintiffs-Appellees.

## OPINION

HURWITZ, Circuit Judge:

The late Al Davis is a gridiron icon, deservedly inducted into the Pro Football Hall of Fame in 1992. He served as coach, then general manager, and finally as the "principal owner" of the Oakland (and Los Angeles) Raiders over some fifty years. During the Davis years, the Raiders appeared in five Super Bowls, winning three.

The case before us arises from a complaint filed in 2011 by Davis and his wife, Carol, against the United States, seeking a refund of income taxes.[1] Davis[2] argues that the

---

[1] By 2011, Davis and the Raiders were hardly strangers to the courts. In 1978, the Los Angeles Coliseum, with the Raiders as cross-claimants, successfully sued the National Football League (NFL) for violation of the antitrust laws for the NFL's refusal to allow the Raiders to move to Los Angeles. *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356 (9th Cir. 1986); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381 (9th Cir. 1984). In 1980, after the Raiders announced their intention to move to Los Angeles, the City of Oakland brought an action to acquire the Raiders' property by eminent domain; the Raiders prevailed after five appeals and eight years of litigation. *City of Oakland v. Oakland Raiders*, 646 P.2d 835 (Cal. 1982) (in bank); *City of Oakland v. Oakland Raiders*, 249 Cal. Rptr. 606 (Ct. App. 1988); *City of Oakland v. Oakland Raiders*, 220 Cal. Rptr. 153 (Ct. App. 1985); *City of Oakland v. Superior Court*, 197 Cal. Rptr. 729 (Ct. App. 1983); *City of Oakland v. Superior Court*, 186 Cal. Rptr. 326 (Ct. App. 1982). In 1984, the Oakland Coliseum successfully sued the Raiders and Davis for unpaid rent. *Oakland-Alameda Cty. Coliseum, Inc. v. Oakland Raiders, Ltd.*, 243 Cal. Rptr. 300 (Ct. App. 1988). In 1997, the Raiders unsuccessfully sued the Oakland Coliseum for negligently misrepresenting the success of advance season ticket sales to induce the team to move back to Oakland. *Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc.*, 51 Cal. Rptr. 3d 144 (Ct. App. 2006). In 1999, the

Internal Revenue Service (IRS) assessed the taxes outside the statute of limitations and in breach of a Closing Agreement between the IRS and the partnership that formally owned the Raiders. The district court held that the breach of contract invalidated the assessments and entered judgment for Davis. We reverse, finding the assessments valid.

## I. Background

Davis had the largest interest in the Oakland Raiders, a California limited partnership (the "Partnership"), which owned and operated the professional football team. Davis was also the president of A.D. Football, Inc., the sole general partner and tax matters partner ("TMP") of the Partnership. *See* 26 U.S.C. ("I.R.C.") § 6231(a)(7).

The Partnership and the IRS were involved in long-running Tax Court litigation. *See Milenbach v. Comm'r*, 318 F.3d 924 (9th Cir. 2003). In 2005, the Partnership and the IRS reached a settlement over tax years 1988 through 1994. The Closing Agreement, which concluded the litigation, was signed by Davis, as President of the TMP.

---

Raiders unsuccessfully sued the NFL, seeking (1) compensation for the "opportunity" the Raiders gave the NFL by moving back to Oakland and thereby opening up a spot for a team in Los Angeles, and (2) damages for the NFL's failure to offer the Raiders more support to develop a stadium in Southern California. *Oakland Raiders v. Nat'l Football League*, 161 P.3d 151 (Cal. 2007).

[2] Al Davis died on October 8, 2011, a few months after this case was filed. Carol Davis is the executrix of his estate and the sole trustee of the Allen and Carol Davis Revocable Trust, which succeeded to Al's interest in this litigation. For convenience, we refer to the plaintiffs collectively as "Davis."

Under the Agreement, the IRS was required to make "computational adjustments" to determine the effect of the settlement on each partner's tax liability. I.R.C. § 6231(a)(6). Paragraph Q of the Closing Agreement gave the partners the following procedural rights related to those computations:

> [E]ach partner of the [Raiders] will be permitted at least 90 days to review and comment on computational adjustments proposed by the IRS with respect to the implementation of this settlement (and at least 60 days to review any revised computational adjustments) prior to the IRS assessing such amounts.

The Closing Agreement was implemented through three stipulations filed in the Tax Court, one each for tax years 1990, 1991, and 1992. Each stipulation included a Form 4605-A, showing the agreed-upon adjustments to the Partnership's informational tax return; a Form 886-Z, showing each partner's share of the corrected income for that tax year; and a corresponding decision to be entered by the Tax Court. The stipulations recited that they were in agreement with and subject to the Closing Agreement. They were signed by Stuart Lipton, identified as counsel for "Petitioner"—the Partnership and its TMP, A.D. Football. On June 6, 2006, the Tax Court approved and entered the stipulated decisions.

The IRS did not distribute its calculations of each partner's computational adjustments until June 2007. Davis responded a few weeks later, but by the time the IRS sent revised calculations on August 27, 2007, it had no time to wait 60 days for Davis to review these calculations (as

provided for by Paragraph Q of the Closing Agreement) because the statute of limitations to make assessments was about to expire. On September 4, 2007, the IRS issued assessments against Davis in the amounts of $501,661 for 1990, $1,820,400 for 1992, and $159,287 for 1995.[3] The IRS applied a portion of refunds otherwise due to Davis for earlier years to satisfy those assessments.

In November 2007, Davis filed an administrative refund claim for tax years 1990 and 1992, arguing that the September 2007 assessments were invalid because the IRS had breached Paragraph Q of the Closing Agreement. The IRS never responded to this claim. In February 2009, Davis filed an administrative refund claim for tax year 1995, claiming that the IRS had breached Paragraph Q, made the September 2007 assessments outside the statute of limitations, and miscalculated interest. The IRS disallowed the claim in large part, adjusting only the calculation of interest.

In 2011, Davis brought this action in the United States District Court for the Northern District of California, seeking refunds for tax years 1990, 1992, and 1995, based on the IRS's breach of Paragraph Q. Before the district court, the IRS argued that it did not breach the Closing Agreement, and that even if it did, the breach did not invalidate the assessments. The district court granted Davis's motion for summary judgment, holding that the IRS's breach of the Closing Agreement invalidated the assessments. The government timely appealed.

---

[3] The IRS issued an assessment for tax year 1995 because, although the Closing Agreement did not expressly govern that tax year, it changed the Net Operating Loss Carryover applicable to that year.

## II. Discussion

### A. Breach of the Closing Agreement

The IRS now admits that it breached Paragraph Q of the Closing Agreement by making the September 2007 assessments without giving Davis a second opportunity to review its calculations. The issue is whether, as the district court concluded, that breach of contract invalidates the subsequent assessments.

Closing agreements are contracts, *States S.S. Co. v. Comm'r*, 683 F.2d 1282, 1284 (9th Cir. 1982), governed by federal common law, *United States v. Nat'l Steel Corp.*, 75 F.3d 1146, 1150 (7th Cir. 1996). "[F]or most purposes closing agreements are just like other contracts." *Id.* And, "damages are always the default remedy for breach of contract." *United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996) (plurality opinion) (citing Restatement (Second) of Contracts § 346, cmt. a (Am. Law. Inst. 1981)).

But Davis does not seek damages; instead, he argues that any assessments made in breach of the Closing Agreement are invalid.[4] Davis relies primarily on I.R.C. § 7121(b)(2), which provides that closing agreements are "final and conclusive." He notes that the Tax Court incorporated the Closing Agreement into its decision, making it enforceable as a court order. But, the "final and conclusive" nature of closing agreements simply means that they "settle an existing dispute with finality," *Nat'l Steel*, 75 F.3d at 1150, and may not be modified or disregarded "except upon a showing of fraud or malfeasance, or misrepresentation of a material fact,"

---

[4] Davis does not seek rescission of the Closing Agreement.

I.R.C. § 7121(b); *see also In re Hopkins*, 146 F.3d 729, 732 (9th Cir. 1998) ("In applying § 7121, courts unanimously have held that closing agreements are meant to determine finally and conclusively a taxpayer's liability for a particular tax year or years."). That a contract is "final" does not dictate the remedy for its breach. *Cf. Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (noting that even after court approval, "[a]n agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law"). And, Davis offers no support for the unlikely proposition that, because a settlement with the IRS is "final" and court-approved, the remedy for any breach, however small, is to free the taxpayer from his pre-existing obligation to pay taxes. If this were the case, the IRS justifiably would be reluctant to enter into closing agreements, for fear that a minor error could have major consequences.

Davis argues that *Philadelphia & Reading Corp. v. United States*, 944 F.2d 1063 (3d Cir. 1991), establishes that the remedy for the breach of a closing agreement is invalidation of subsequent assessments. In that case, a settlement waived the statutory requirement that the IRS mail a notice of deficiency prior to making assessments. *Id.* at 1066–67. The settlement agreement expressly conditioned that waiver on the IRS delaying the assessments until after it had approved a schedule of overpayments, so that the taxpayer, which had overpaid taxes in certain years and underpaid in others, could pay only the net balance owed. *Id.* at 1067. The IRS, however, assessed taxes before the overpayments had been approved and, more importantly, without sending the statutorily mandated notice of deficiency. *Id.* at 1068. The Third Circuit held that the assessments were invalid. *Id.* at 1072.

However, *Philadelphia & Reading* is of no aid to Davis. Because the IRS had failed to approve the schedule of overpayments, the Third Circuit found that the taxpayer's contractual waiver of its statutory right to receive a notice of deficiency never came into effect. *Id.* The assessments were therefore not authorized by statute. *Id.* at 1072–73. Here, by contrast, the IRS violated no law in making the assessments.

At bottom, the problem with Davis's argument is that his obligation to pay taxes validly and accurately assessed comes from the Internal Revenue Code, not the Closing Agreement, which only specified the treatment of certain Partnership income as inputs to the calculation of his taxes. The IRS's failure to perform its contract with the Partnership cannot relieve Davis of his statutory obligation to pay taxes; nothing in the Closing Agreement provided that any taxes assessed on the partners pursuant to statute would be rendered invalid if the government failed to perform.

The IRS breached its contract. That entitled Davis to a remedy, but only one in contract.[5] Moreover, although the breach denied Davis an opportunity to comment on the amounts of the assessments before they were made, it did not prevent him from challenging the assessed amounts; Davis could have sought to challenge those amounts in an administrative refund claim or a refund action. *See* I.R.C. § 6230(c)(1)(A). He did not. And, had he done so, Davis

---

[5] Contrary to Davis's argument, the government preserved this argument in its motion for summary judgment, which argued that "A 'Breach' Does Not Entitle Plaintiffs to a Tax Refund." Because the government does not contest Davis's ability to raise a contractual claim, we assume for present purposes that although not personally a party to the Closing Agreement, Davis was a third-party beneficiary of that contract.

might have sought consequential damages resulting from his having to challenge the assessments in a more expensive manner than that provided for by Paragraph Q. Again, he did not. Instead, he threw a Hail Mary and sought a full refund. That pass falls incomplete. We hold that the IRS's breach of Paragraph Q did not invalidate the assessments.[6]

## B.  Statute of Limitations

Because we find that the district court erred in holding that the breach of the Closing Agreement invalidated the assessments, we must address an issue that the court pretermitted—whether the assessments were untimely.

We begin with general principles of partnership tax law. A partnership is not liable as an entity for income taxes. I.R.C. § 701. Rather, income is allocated among the partners. *Id.* § 702. Until tax year 1982, partnership tax disputes were conducted at the individual partner level. *See Crnkovich v. United States*, 202 F.3d 1325, 1328 (Fed. Cir. 2000) (per curiam). The IRS was therefore required to conduct separate investigations for each partner, and enter into "separate settlement agreements with each." *Id.* Congress responded to this situation in the Tax Equity and Fiscal Responsibility Act (TEFRA), I.R.C. §§ 6221–6233, which provided for the

---

[6] We express no opinion as to what contractual remedies remain available to Davis, if any, or the appropriate forum in which to pursue them.

resolution of partnership tax disputes at the partnership level.[7] *Id.* § 6221; *Crnkovich*, 202 F.3d at 1328.

TEFRA requires each partnership to designate a TMP with primary responsibility over tax disputes. *See, e.g.*, I.R.C. §§ 6223(g) (TMP must keep partners informed of proceedings), 6224(c)(3) (TMP may bind certain other partners), 6226(a)–(b) (TMP has first opportunity to challenge administrative partnership tax rulings in court, and may intervene in a challenge brought by another partner), 6231(a)(7) (defining TMP); *see also Comput. Programs Lambda, Ltd. v. Comm'r*, 89 T.C. 198, 205 (1987). Other partners retain the right to participate in tax disputes, and any partner whose taxes may be affected by a partnership tax case in district or tax court is statutorily a party to that case, bound by the judgment. I.R.C. §§ 6224(a), 6226(c); *Crnkovich*, 202 F.3d at 1328.

Although TEFRA generally provides that the tax treatment of partnership items will be determined at the partnership level, the IRS still can enter into settlement agreements with individual partners. I.R.C. § 6224. The settling partner's partnership items then convert to "nonpartnership items," *id.* § 6231(b)(1), and the partner can be dismissed from the partnership-level proceeding, *id.* § 6226(d)(1)(A); *Mathia v. Comm'r*, 669 F.3d 1080, 1085–86 (10th Cir. 2012) (Section 6231(b) recognizes that "individual partners may opt out of a partnership-level proceeding by entering into a settlement agreement with the IRS with respect to the determination of their individual partnership

---

[7] The Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101, 129 Stat 584, 625–638, repealed TEFRA, effective for partnership tax years beginning after December 31, 2017.

items."); *Olson v. United States*, 37 Fed. Cl. 727, 733 (1997) *aff'd*, 172 F.3d 1311 (Fed. Cir. 1999) ("[T]he settling partner essentially has become a free agent to whom the collective approach of TEFRA no longer applies.").

If the IRS "enters into a settlement agreement with the partner" under I.R.C. § 6231(b)(1)(c), the partner's partnership items convert to nonpartnership items, *id.* § 6231(b)(1), which triggers a one-year statute of limitations under I.R.C. § 6229(f)(1). If the IRS does not enter "into a settlement agreement with the partner," then the one-year statute of limitations under I.R.C. § 6229(d) begins to run when the tax court decision becomes final, which occurred here 90 days after the tax court entered the decision documents. *See* 26 U.S.C. § 7481(a)(1); Tax Ct. R. 190(a).

The Tax Court approved the stipulated decision documents in this case on June 6, 2006. Davis argues that these documents were each a "settlement agreement with the partner," I.R.C. § 6231(b)(1)(C), so that the statute of limitations expired on June 6, 2007, one year after their entry. Davis relies on the prefatory language of the stipulated decisions, which provide that the adjustment to the Partnership's returns is made "[p]ursuant to the agreement of the parties in this case." Davis argues that, under I.R.C. § 6226, all partners were parties to the Tax Court proceeding, so each stipulation was "a settlement agreement with the partner" under I.R.C. § 6231(b)(1)(c). Because the one-year statute of limitations under I.R.C. § 6229(f) ended on June 6, 2007, Davis claims that the government's September 4, 2007 assessments were too late.

The government argues that the individual partners did not enter into a settlement agreement with the government on

June 6, 2006. Rather, they were bound by force of law when the tax court entered the stipulated decision documents, because the individual partners were parties to the tax court proceeding under I.R.C. § 6226(c), and a decision by the tax court in a partnership action is binding on all parties, Tax Ct. R. 251. Because the individual partners did not "enter into a settlement agreement with" the IRS for purposes of § 6231(b)(1)(C), the applicable statute of limitations, *see* I.R.C. § 6229(d), expired on September 4, 2007, one year and 90 days after the stipulated decisions were entered. Accordingly, the government argues, its September 4, 2007 assessments were timely.

Under the plain language of I.R.C. § 6231(b)(1)(C), we conclude that the IRS does not "enter into a settlement agreement with the partner" when it enters into a settlement agreement with the TMP and the individual partner is bound merely by operation of the tax court's decision to which the partner is a party. Here, the stipulations were not agreements with Davis individually. He did not sign them, nor did anyone purporting to represent him in his individual capacity. Instead, each stipulation was signed only by an attorney for the IRS and Stuart Lipton, in his capacity as "Counsel for Petitioner."[8] The "Petitioner" in the Tax Court proceeding was the Partnership and its TMP, A.D. Football. Thus, the stipulations, like the Closing Agreement, were agreements only between the IRS and the Partnership. To be sure, these documents had consequences for Davis, but they were not agreements "with" him under I.R.C. § 6231(b). Nothing in TEFRA indicates that Congress meant the word "partner" in § 6231(b) to mean "tax matters partner;" to the contrary,

---

[8] Davis does not argue that Lipton signed in his capacity as Davis's personal lawyer.

Congress appears to have chosen its wording carefully throughout the statute, differentiating between partners in general and the tax matters partner repeatedly. *See, e.g.*, I.R.C. §§ 6223, 6224(c), 6226(a)-(b), 6226(g), 6227, 6228(a), 6229(b).

Because the Closing Agreement and stipulations were not a "settlement agreement with" Davis within the scope of I.R.C. § 6231(b), the assessments made on September 4, 2007 were timely, as they occurred within one year after the Tax Court decision became final.  I.R.C. § 6229(d).

### III. Conclusion

We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.