**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 20-CV-302

PHCDC1, LLC, et al., APPELLANTS,

v.

EVANS AND JOYCE WILLOUGHBY TRUST and
CHRISTOPHER WILLOUGHBY, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-6968-18)

(Hon. John M. Campbell, Trial Judge)
(Hon. Jason Park, Trial Judge)

(Argued June 24, 2021                    Decided August 26, 2021)

*Alison A. Besunder*, *pro hac vice*, with whom *Donald Dinan* and *Becky (Hyun Jeong) Baek*, *pro hac vice*, were on the briefs, for appellants.

*Christopher LaFon*, with whom *Scott Rome* and *Anna Margolis* were on the briefs, for appellees.

Before MCLEESE and DEAHL, *Associate Judges*, and GREENE, *Senior Judge, Superior Court of the District of Columbia*.[*]

MCLEESE, *Associate Judge*: Appellants PHCDC1, LLC, et al., seek review of an order granting summary judgment to appellees, the Evans and Joyce Willoughby Trust and Christopher Willoughby. We affirm in part, vacate in part, and remand for further proceedings.

---

[*] Sitting by designation pursuant to D.C. Code § 11-707(a) (2012 Repl.).

**I.**

Except as indicated, the following appears to be undisputed. In 2015, PHCDC1 leased property from the Trust in order to operate a bar. Appellants Ryan Burke, Kenneth McCoy, and Public House Collective, Corp. were guarantors of the lease. The lease contemplated that PHCDC1 would alter the property at its own expense. Depending on the cost of the alterations, PHCDC1 could be entitled to a rent abatement.

PHCDC1 obtained financing for the lease from Newtek Small Business Finance, LLC. PHCDC1 gave Newtek a security interest in PHCDC1's assets, including inventory and equipment on the property. In a contract between PHCDC1 and the Trust titled "Landlord's Non-Interference and Consent," the Trust agreed that it would not interfere with Newtek's security interest and that any interest the Trust might obtain in the collateral would be subordinate to Newtek's interest. The Trust further agreed to provide Newtek with notice of any default by PHCDC1 and to give Newtek an opportunity to cure the default and to remove any collateral.

In 2018, the Trust sued PHCDC1 in the Landlord and Tenant (L&T) Branch of the Superior Court, claiming that PHCDC1 had failed to pay rent owed under the

lease. The Trust sought possession of the property and a money judgment for back rent and costs. That suit was settled pursuant to an agreement in which PHCDC1 agreed to surrender possession of the property. The handwritten settlement agreement originally contained language indicating that the Trust would seek money damages in the Civil Branch of the Superior Court, but that language was crossed out in the version that was signed by the parties and filed with the court. The suit was then closed by the Superior Court.

Later in 2018, the Trust filed the present action in the Civil Branch of the Superior Court, naming PHCDC1 and the guarantors as defendants and seeking damages of over $250,000, reflecting back rent and other costs. PHCDC1 and the guarantors filed a motion to dismiss the Trust's claim, arguing, among other things, that the claim was barred by res judicata in light of the settlement of the earlier L&T action. The trial court denied the motion to dismiss, concluding that District of Columbia law permits a landlord to sue for rent in the Civil Branch after obtaining a judgment for possession in the L&T Branch. The trial court subsequently granted summary judgment to the Trust on the claim for owed rent and related damages. The trial court explained that PHCDC1 and the guarantors had failed to meaningfully dispute that they owed rent under the lease and had failed to pay it.

PHCDC1 and the guarantors had filed three counterclaims, alleging that the Trust: (1) breached the lease by failing to provide for rent abatement; (2) breached the non-interference agreement by refusing to turn collateral over to Newtek; and (3) tortiously interfered with PHCDC1's financing agreement with Newtek. PHCDC1 and the guarantors also filed a third-party claim against appellee Chris Willoughby, arguing that Mr. Willoughby had made fraudulent misrepresentations to induce PHCDC1 to keep operating the bar and investing in the property. The trial court granted summary judgment to the Trust and Mr. Willoughby on those claims.

As to the rent-abatement claim, the trial court concluded that PHCDC1 was not entitled to rent abatement under the lease, because it was undisputed that PHCDC1 had failed to submit written plans, provide copies of paid invoices, and obtain prior written approval before altering the property, as required by the lease.

As to the claimed breach of the non-interference agreement, the trial court concluded that the lease provided that any property left behind after termination of the lease was abandoned and belonged to the Trust. The trial court acknowledged that the Trust might have breached the non-interference agreement, by failing to give Newtek notice of PHCDC1's default and by failing to permit Newtek to retrieve collateral. The trial court concluded, however, that the lease rather than the non-

interference agreement governed the dispute between the Trust and PHCDC1. In reaching that conclusion, the trial court appeared to suggest that Newtek also was a signatory to the non-interference agreement. The trial court also stated that Newtek, rather than PHCDC1, was the proper party to sue for breach of that agreement. In fact, Newtek did not sign the non-interference agreement.

As to the claim of tortious interference with contract, the trial court concluded that PHCDC1 could not bring such a claim. In the trial court's view, such a claim cannot be brought if the alleged interference caused the plaintiff (here PHCDC1) to breach a contract, but rather can be brought only if the alleged interference caused a third party (here Newtek) to breach a contract.

Finally, as to the claim of fraudulent misrepresentation against Mr. Willoughby, the trial court held that PHCDC1 had failed to allege fraud with particularity.

## II.

We turn first to the order granting summary judgment to the Trust on its claim for damages arising from PHCDC1's failure to pay rent. We affirm that ruling.

We review orders granting summary judgment de novo. *District of Columbia v. Place*, 892 A.2d 1108, 1110-11 (D.C. 2006). "Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ward v. Wells Fargo Bank, N.A.*, 89 A.3d 115, 126 (D.C. 2014) (internal quotation marks omitted). We review the record in the light most favorable to the party opposing summary judgment. *Id.*

**A.**

PHCDC1 argues that the Trust's claim for money damages was barred by res judicata. *See generally, e.g.*, *Calomiris v. Calomiris*, 3 A.3d 1186, 1190 (D.C. 2010) ("The doctrine of *res judicata*—or claim preclusion—precludes relitigation of the same claim between the same parties.") (internal quotation marks omitted). We disagree.

The general rule is that claim preclusion "operates to bar in [a] second action . . . [claims] arising out of the same transaction which could have been raised" in a first action. *Calomiris*, 3 A.3d at 1190 (internal quotation marks omitted). As the trial court explained, however, District of Columbia law has long recognized an exception to that rule, generally permitting landlords to obtain possession in the L&T

Branch and then to file a second action in the Civil Branch seeking money damages. *E.g.*, *Norris v. Green*, 656 A.2d 282, 285-86 (D.C. 1995). PHCDC1 argues, however, that this case differs from cases such as *Norris*, because in this case the Trust initially sought money damages in the L&T action. We see no reason to apply a different rule to cases such as the present case, in which a landlord initially seeks damages in a L&T action, abandons that request for relief before the trial court decides the damages issue, and then files a separate action in the Civil Branch seeking money damages.

PHCDC1 argues that the settlement agreement resolved the Trust's right to money damages. We conclude to the contrary. As executed, the consent agreement did not speak to the issue of damages. The subsequent closure of the case by the trial court also does not reflect a determination of the damages issue. At most, that closure could be viewed as a dismissal at the Trust's request, and such dismissals are without prejudice unless otherwise stated. Super. Ct. Civ. R. 41(a)(2); Super. Ct. L&T R. 2 (R. 41 is generally applicable in L&T cases).

Finally, PHCDC1 argues for the first time in its reply brief that the trial court in the L&T action had earlier ruled that the Trust had failed to prove damages. We generally do not consider arguments raised for the first time in a reply brief. *See,*

*e.g.*, *J.P. v. District of Columbia*, 189 A.3d 212, 222 (D.C. 2018) ("It is the longstanding policy of this court not to consider arguments raised for the first time in a reply brief.") (internal quotation marks omitted). In any event, the docket entry upon which PHCDC1 relies appears to be an order declining to enter a default judgment, not a final determination on the merits of the Trust's entitlement to damages.

## B.

PHCDC1 also challenges the trial court's grant of summary judgment to the Trust on the Trust's claim for back rent and related damages. PHCDC1, however, has not briefed that issue with adequate specificity, having failed to identify specific disputes of fact or issues of law that support reversal of the trial court's ruling. *See generally, e.g.*, *Miller v. United States*, 209 A.3d 75, 80 (D.C. 2019) (declining to address issue that was not adequately briefed on appeal). We also see no basis to disagree with the trial court's conclusion that PHCDC1 failed to establish a material dispute of fact as to whether PHCDC1 owed back rent and related costs.

## III.

We now turn to the grant of summary judgment to Mr. Willoughby on PHCDC1's claim of fraudulent misrepresentation. We agree with the trial court that PHCDC1 failed to identify evidence that would reasonably support a conclusion that Mr. Willoughby made intentionally false statements.

## IV.

We agree with PHCDC1's challenge to the order granting summary judgment as to each of the three counterclaims.

## A.

As previously noted, in granting summary judgment on PHCDC1's rent-abatement counterclaim, the trial court reasoned that PHCDC1 was not entitled to rent abatement, because it was undisputed that PHCDC1 had failed to submit written plans, provide copies of paid invoices, and obtain prior written approval before altering the property, as required by the lease. As the trial court acknowledged, however, PHCDC1 did dispute some of those points. For example, Mr. Burke

testified at his deposition that the Trust "approved all of the work" and had "sub-plans for everything"; that he believed PHCDC1 had given the Trust "copies of most everything"; that he had gone over the alterations with the Trust multiple times; and that the Trust had promised to provide the rent abatement. In unsworn interrogatory answers, Mr. Burke also stated that the Trust had been sent all invoices for work on the property and had given written approval to structural changes to the exterior of the property. We acknowledge that the unsworn interrogatory answers by themselves would not have sufficed to establish a material dispute of fact for purposes of summary judgment. *See, e.g.*, *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1019 (D.C. 2013) (party opposing summary judgment must provide material facts under oath). We mention them only to provide further context for Mr. Burke's sworn deposition testimony.

Relatedly, the parties dispute on appeal the potential significance of various additional lease provisions that might bear on the rent-abatement issue, including Lease ¶¶ 12.2 (alterations to commence on date parties signed lease) and 12.3 (if landlord does not respond to submission of plans within ten days, landlord deemed to have approved modifications); Lease Exh. B (describing planned alterations). The parties also dispute whether the Trust waived its right to insist on strict compliance with the written-approval and written-notice requirements of the lease.

We hold that, given these factual disputes and legal uncertainties, the trial court erred in granting summary judgment to the Trust on PHCDC1's rent-abatement counterclaim. We therefore vacate the grant of summary judgment on that counterclaim and remand the case for further proceedings.

**B.**

We also vacate the grant of summary judgment to the Trust on PHCDC1's claim that the Trust breached the non-interference agreement. As previously noted, the trial court's grant of summary judgment on this counterclaim appears to have rested in part on the mistaken belief that Newtek had signed the non-interference agreement. Moreover, we see no basis for the trial court's implication that PHCDC1, which did sign the agreement, would not be a proper plaintiff to claim a breach of that agreement, because the agreement did not explicitly grant PHCDC1 a right to sue or collect damages. *See, e.g.*, *Davis v. United States*, 811 F.3d 335, 339 (9th Cir. 2016) ("[D]amages are always the default remedy for breach of contract.") (quoting *United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996) (plurality opinion)); *see generally, e.g.*, Restatement (Second) of Contracts § 346 (injured party has right to sue for damages unless claim has been suspended or discharged) (Am. L. Inst. 1981); *id.* cmt. a ("Every breach of contract gives the injured party a right to damages

against the party in breach, unless the contract is not enforceable against that party . . . . The parties can by agreement vary the rules stated in this Section, as long as the agreement is not invalid . . . .").

To the extent that the trial court suggested that the lease essentially trumped the Trust's obligations under the non-interference agreement, we view that as far from clear under the pertinent provisions of both agreements. *See* Lease ¶¶ 13.3 (property left behind after surrender of possession deemed abandoned) and 24.7 (Trust agrees to subordinate lien interest in tenant's personal property used as security for financing of lease); Non-Interference Agreement ¶¶ 1 (Trust will not interfere with Newtek's right to possession of collateral), 3 (Trust waives any interest Trust might subsequently acquire in collateral), 4 (Trust will provide notice to Newtek of default by PHCDC1), 5 (agreement does not limit Trust's rights with respect to PHCDC1), and 6 (Newtek may remove collateral from premises upon default by PHCDC1). Finally, although the Trust raises a variety of alternative arguments, not addressed by the trial court, in support of summary judgment, we decline to address those alternative arguments for the first time on appeal. *See, e.g.,* *Jaiyeola v. District of Columbia*, 40 A.3d 356, 372 (D.C. 2012) (although court has discretion to affirm grant of summary judgment on alternative grounds not decided

by trial court, court has "cautioned that it usually will be neither prudent nor appropriate for this court" to do so) (internal quotation marks omitted).

## C.

We further vacate the grant of summary judgment to the Trust on PHCDC1's claim of tortious interference with contract. As we have previously noted, the trial court concluded that such a claim can be brought only if the alleged interference caused a third party, rather than the plaintiff, to breach the contract at issue. We disagree.

It is true that some language in our cases describing tortious interference with contract seems to support the trial court's reasoning. *See, e.g.*, *Casco Marina Dev., L.L.C. v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 84 (D.C. 2003). That language, however, was not focused on the question whether a claim for tortious interference with contract can exist where the defendant interferes with the plaintiff's performance under the contract at issue. That language therefore does not constitute a binding holding. *See, e.g.*, *Morales v. United States*, 248 A.3d 161, 181 (D.C. 2021) (language in prior decision was not holding, because "[t]he judicial mind was not asked to focus upon, and the opinion did not address, the point at

issue") (internal quotation marks omitted). Moreover, our decision in *Casco* also described the elements of tortious interference using broader language that would seem to accommodate claims brought by a plaintiff that was tortiously prevented from performing under a contract. *Casco*, 834 A.2d at 83 ("This court has stated that the elements of tortious interference with contract are: (1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach.") (internal quotation marks omitted). That language equally was not focused on the issue now before us, and it, too, therefore does not bind us.

As far as we have been able to determine, this court has not squarely decided the issue, but the Restatement does seem to permit tortious-interference claims brought by a party that was caused to breach a contract. Restatement (Third) of Torts: Liab. for Econ. Harm § 17 (Am. L. Inst. 2020); *id.* cmt. i & reporter's note ("In a typical case of liability under this Section, the defendant has convinced another party to breach a contract with the plaintiff and make a contract with the defendant instead. Liability can also result, however, from a defendant's interference with the plaintiff's own performance of a contract.") (citing cases); Restatement (Second) of Torts § 766A (Am. L. Inst. 1979) ("One who intentionally and improperly interferes with the performance of a contract (except a contract to

marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him."); *id.* reporter's note (citing cases).

> We give substantial weight to the approach taken by the Restatement. The Restatement is written by the American Law Institute (ALI), an organization comprising especially distinguished judges, attorneys, and scholars. The Restatement may be regarded both as the product of expert opinion and as the expression of the law by the legal profession. Although we are not required to follow the Restatement, we should generally do so where we are not bound by the previous decisions of this court or by legislative enactment, for by so doing uniformity of decision will be more nearly effected.

*In re Nace*, 98 A.3d 967, 975-76 (D.C. 2014) (per curiam) (brackets, ellipses, and internal quotation marks omitted). We see no reason not to follow the Restatement on this issue. We therefore hold that a claim of tortious interference with contract can be brought by a plaintiff who alleges that the defendant interfered with the plaintiff's performance under a contract. The trial court's grant of summary judgment rested on the contrary conclusion of law. We therefore vacate the order granting summary judgment to the Trust on this counterclaim. Although the Trust raises alternative arguments for summary judgment that were not addressed by the

trial court, we decline to address those alternative arguments at this juncture. *Jaiyeola*, 40 A.3d at 372.

## V.

For the foregoing reasons, we affirm the order granting summary judgment to the Trust on its claim for damages; we affirm the order granting summary judgment to Mr. Willoughby on PHCDC1's claim of fraudulent misrepresentation; we vacate the trial court's order granting summary judgment to the Trust on PHCDC1's counterclaims for breach of contract for failing to provide a rent abatement, breach of the non-interference agreement, and tortious interference with contract; and we remand the case for further proceedings.

*So ordered.*